**COMMISSIONER OF INTERNAL REVENUE v. TERRE HAUTE ELECTRIC CO., Inc.**

**TERRE HAUTE ELECTRIC CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 4973, 4975.

Circuit Court of Appeals, Seventh Circuit.
Nov. 16, 1933.

Rehearing Denied Jan. 5, 1934.

Pat Malloy, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Special Assts. to Atty. Gen., for the Commissioner.

A. E. James and Harry A. Fellows, both of Washington, D. C., for Terre Haute Electric Co.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

EVANS, Circuit Judge.

Were the taxpayer, the Terre Haute Electric Company, and its parent company, the Terre Haute, Indianapolis and Eastern Traction Company, affiliated within the meaning of that word as used in the Revenue Act?

The taxpayer is an Indiana corporation having 20,000 shares of common and 10,000 shares of preferred stock. During the years 1922 and 1923, all of its common stock was owned by the parent company. In 1922, 18.-16 per cent. of taxpayer's preferred stock was held by stockholders of the parent company. During 1922, sixty-five preferred stockholders of taxpayer (representing 24.56 per cent. of the preferred stock) owned no stock in the parent company, but owned 49.-96 per cent. of the stock of a co-subsidiary, whose common stock was also completely owned by the parent company. The subsidiary owned no stock of the parent company. All stock of the subsidiaries held equal voting privileges.

Section 240 of the Revenue Act of 1921 (40 Stat. 1081, 1082), permitting the filing of consolidated returns by affiliated companies, reads as follows:

"(c) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others * * *."

In addition to showing stock ownership, it appears that the taxpayer leased its property to the parent company for 999 years. The officers of the two companies were the same, and the parent company selected the officers of the subsidiary company. Both companies were operated as an economic unit. The terms of the long lease gave control of the lessor's property to the lessee and reduced the former's function to nominal activity.

In Handy & Harman v. Burnet, 284 U. S. 136, 52 S. Ct. 51, 52, 76 L. Ed. 207, the court said:

"* * * The section requires control of substantially all of the stock; control of the corporations is not enough. The carrying on of a business unit by two or more corporations does not in itself constitute affiliation. * * * We assume in favor of petitioner that they, through their power over Hamilton's official position and salary, their ability to dominate both corporations or by other means, were in position effectually to influence him in respect of the voting, use or disposition of the stock issued to him, and thus as a practical matter to exert a kind of control called by counsel 'actual' to distinguish it from a legally enforceable control.

"* * * It would require very plain language to show that Congress intended to permit consolidated returns to depend on a basis so indefinite and uncertain as control of stock without title, beneficial ownership or legal means to enforce it. Control resting solely on acquiescence, the exigencies of business or other considerations having no binding force is not sufficient to satisfy the statute."

In Atlantic City Electric Co. v. Commissioner, 288 U. S. 152, 53 S. Ct. 383, 384, 77 L. Ed. 667, the court said:

"With respect to control of stock, as creating the affiliation which affords a basis for a consolidated return * * *. The requirement of control, in the absence of legal title or beneficial ownership, is not satisfied by acquiescence or by business considerations without binding force. There must be a control that is legally enforceable. * * * And it must be control of 'substantially all the stock.' * * *

"* * * In establishing ownership or control of substantially all the stock as the criterion of a business unit, the statute made no distinction between preferred and common stock. It referred simply to 'stock,' and we perceive no ground upon which stock with voting right can be treated as excepted. * * *

"* * * The statute is not concerned with a failure to exercise existing rights * * *."

In the light of these decisions, we conclude that the Commissioner and the Board correctly found that the taxpayer and the parent company were not affiliated within the meaning of section 240 of the Revenue Act of 1921.

■ *Deduction for Depreciation.* The question may be stated thus: May a lessor who has leased all its property for a period of 999 years under a lease, the terms of which provided that the lessee will "during said term renew, repair and replace the same, so as to maintain and keep the demised premises in as good order, repair and condition as the same are now and in their present state of efficiency," make deductions for depreciation of its property? The lease also provided that there should be an appraisal at the beginning, as well as at the termination of the lease, and the value of the lessor's property at the time the lease was executed should be restored to it at the time the lease expired. Sums in excess thereof went to the lessee.

Upon the authority of Weiss v. Wiener, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720, we hold that there can be no deduction for depreciation in this case for the reason that, because of the lease, the taxpayer has failed to show a present loss to it.

■ When was the disputed item of income received? Article 10 of the lease provided:

"The Lessee covenants that it will during the continuance of this lease pay, satisfy and discharge as the same shall accrue all taxes * * * general and special, ordinary and extraordinary, of every nature and description which have been or may be lawfully imposed or assessed during the continuance of this lease * * *; said payments to be made as the same become due to the officer * * * entitled by law to receive the same; *. * * it being understood and agreed, however, that if the Lessee shall desire to resist by legal proceedings the payment of any tax or assessment, and shall so notify the Lessor the Lessor shall not pay nor shall the Lessee be obliged to pay any such tax or as-

sessment until thirty days after final adjudication thereupon by the court having jurisdiction in such cases **\*** **\*** **\*.**"

The court in Old Colony Trust Company v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918, and United States v. Boston & M. R. Co., 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929, held that the lessor realizes income in the nature of rent through the payment by the lessee of the lessor's income taxes pursuant to the terms of a lease.

The taxpayer admits that the amount of additional taxes for the years 1922 and 1923, occasioned by the rejection of its asserted deduction for depreciation, is taxable income upon which it must pay a tax. It denies, however, that such sums were rightly included in its 1922 and 1923 income. Its reliance is upon that part of the lease which gives to the lessee the right to postpone payment in case it desires to resist by legal proceedings the payment of any tax "until thirty days after final adjudication thereupon by the court having jurisdiction in such cases." In other words, the taxpayer contends that the additional taxes did not constitute income for either 1922 or 1923 and, in fact, will not become income until final adjudication of the question by this court or by the Supreme Court.

Under the ruling of the court in U. S. v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347, and Uncasville Mfg. Co. v. Commissioner (C. C. A.) 55 F.(2d) 893, we are constrained to hold otherwise. The amount of the taxes may be clouded in doubt. Some time may be required to determine their correct amount. The lessee was permitted to postpone the date of payment until any tax litigation over the amount was concluded. The obligation, however, became fixed by the terms of the lease.

The lessee's obligation was twofold. It was to pay a certain sum in cash and to pay all taxes which might be assessed or imposed upon the lessor. This obligation represented income to the lessor. Payment by lessee need not be all on one date. The amount may not be definitely known in advance of the Government's tax levy. Nevertheless, the obligation of lessee to pay constituted income of lessor in the year the tax obligation arose. This is the theory of the above-cited decisions.

There is stronger reason, it seems to us, for holding that the income tax on taxpayer's income, which the lessee was required to pay, became part of the taxpayer's income the year after the income accrued; that is, when the tax thereon became payable, rather than thirty days after the court has decided the disputed question of amount. The above-cited cases, however, seem to settle the question adversely to the taxpayer.

The order of the Board of Tax Appeals is reversed with directions to enter an order in accordance with the views here expressed.