**HELVERING, Com'r of Internal Revenue, v. TERMINAL R. ASS'N OF ST. LOUIS.**

No. 10771.

Circuit Court of Appeals, Eighth Circuit.

April 19, 1937.

WOODROUGH, Circuit Judge, dissenting.

740

Warren F. Wattles, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

James M. Chaney, of St. Louis, Mo. (T. M. Pierce, of St. Louis, Mo., on the brief), for respondent.

Before STONE, GARDNER, and WOODROUGH, Circuit Judges.

STONE, Circuit Judge.

This is a petition brought by the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals disallowing a determination of a deficiency tax by the Commissioner.

The taxpayer is a corporation conducting a terminal railroad business at St. Louis, Mo. It owns the outstanding capital stock of the St. Louis Merchants Bridge Terminal Railway Company and of the Wiggins Ferry Company, which last company owns all of the outstanding capital stock of the St. Louis Transfer Railway Company and of the East St. Louis Connecting Railway Company. The taxpayer, for itself and the above-affiliated companies, filed consolidated income tax returns for the years 1926 to 1929, both inclusive. By agreements between all of the companies the entire tax was to be assessed against the Terminal. The Commissioner determined deficiencies in each of the above years, and the taxpayer appealed to the Board. In the amendments to answers filed before the Board by the Commissioner he asked affirmative relief alleging that he had erroneously allowed certain deductions for each of the years on account of depreciation and sought to have the deficiencies increased by the rectification of these claimed errors.

To understand the issues before the Board and here and the determination of the Board, it is necessary to state the relation between the taxpayer and its affiliates who joined in the consolidated return. In 1925, the taxpayer leased the properties of the St. Louis Merchants Bridge Terminal Railway Company, of the East St. Louis Connecting Railway Company, and of the St. Louis Transfer Railway Company for a period beginning January 1, 1926. The term of the leases was ninety-nine years, subject to termination, however, by either party on thirty days' written notice. These leases were executed at the suggestion of a member of the Interstate Commerce Commission, in view of some difficulty in consolidating the companies under section 5 of the Interstate Commerce Act, as amended by the Transportation Act 1920 (41 Stat. 456, 480, § 407, 49 U.S.C.A. § 5), and were designed to effect (in a practical sense) a consolidation for operating purposes under the Terminal. The properties leased consisted of railways, bridges, structures, depots, shops, locomotives, cars, and all other properties comprising the entire railroad systems owned by the lessors. The required rental consisted solely of the taxes, assessments, and other like charges imposed upon the respective lessor companies and, as to one of the companies, interest on its outstanding bonds. Each lease contained the provision following: "The Lessee Company shall and will maintain and keep the premises hereby delivered, and every part thereof, in good condition, and make all necessary repairs and renewals of the same, and operate and use the same for the purposes for which the Lessor Company holds the same, and shall and will indemnify and save harmless the Lessor Company from any and all claims for damages arising out of such operation and use."

During the above years, the properties were operated by the taxpayer in accordance with the leases. The various expenditures made by the taxpayer in the payment of interest, taxes, assessments, repairs, renewals, maintenance, etc., as required by the leases, were returned and deducted as expenses from gross income. These deductions were allowed. In addition thereto, the taxpayer claimed and the Commissioner allowed deductions for depreciation on the properties of the lessors in specified sums. It is these deductions for depreciation which the Commissioner contended in his amended answers had been improperly allowed and should be added to gross income. It is for the taxes thereon that these deficiencies were determined.

Before the Board the Commissioner contended that the taxpayer had no capital investment in the properties and, therefore, had nothing to recover by way of depreciation thereof; that the taxpayer had been allowed all deductions to which it was entitled, including all expenses of repairing and maintaining the property in good condition and all costs of renewals; and that the lessors suffered no loss from depreciation on their properties and were not entitled to deductions therefor. His argument in support was that the loss from depreciation cannot fall upon the lessee because it owns none of the properties and that it cannot fall on lessors since the lessee is required to maintain every part of the properties in good condition and make all necessary repairs and renewals thereof. Therefore, he concluded that since neither the taxpayer nor the lessors were entitled to depreciation, he had erred in allowing any such.

A majority of the Board determined that the taxpayer lessee was not, in its own separate right, entitled to any deduction for depreciation on the properties, because it did not own them and that such depreciation would fall upon the lessor owners. However, that since the lessors and the lessee had joined in a consolidated return for the years involved and since the taxpayer is liable for the total tax on the net income, including any depreciation, the Commissioner would fail in having the deficiencies increased unless the evidence showed that neither the lessee nor the lessors were entitled to the deductions for depreciation. It then determined that the "renewals" required in the above-quoted provision of the leases were not intended to and did not cover the depreciation growing out of obsolescence and that there was nothing in the evidence to show that the deductions in question were not in proper amounts. Therefore, it determined that the deficiencies claimed by the Commissioner should be disallowed for failure of proof upon his part. There was a dissent by four members of the Board on the grounds that the pleadings before the Board did not cover the issue of depreciation to the lessors; that it was doubtful whether the lessors would be entitled to depreciation; that there was no showing that the deductions therefor, if allowable, would be in the amounts claimed by the lessee; and that the Commissioner had met his burden of proof when he showed

that the lessee was not on its own account entitled to the deductions for depreciation.

The petitioner presents here two issues. The first of these is that the Board had no jurisdiction to decide whether the taxpayer's affiliates as lessors of the leased property were entitled to a depreciation allowance; and, second, that the taxpayer's affiliates as lessors were not entitled to allowances for depreciation on the leased property.

### I. Jurisdiction of Board.

It seems to us that the Board had the jurisdiction here challenged. One reason, as advanced by respondent, is that the issue here was submitted under a stipulation of facts which covered the entire situation and, therefore, the preliminary pleadings before the Board should be disregarded. For this position it relies upon Saltonstall v. Russell, 152 U.S. 628, 630, 14 S.Ct. 733, 38 L.Ed. 576. This position is not well taken in view of the clear statement of the Supreme Court in General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 187, 80 L.Ed. 154, where the Supreme Court, in speaking of the effect of stipulations of facts before the Board of Tax Appeals, says: "Stipulations concerning facts and any other evidence properly are accommodated to issues adequately raised."

The reason the Board had jurisdiction is that the issue as to the lessors having allowable depreciation was properly raised before the Board by the pleadings. It is true that no specific issue as to this matter was presented by the pleadings but the broad issue included such. This broad issue was the claim that the gross taxable income in the consolidated returns should not be decreased by depreciations. The situation that the return was a consolidated one (covering all of the income and all of the allowable deductions of the companies joining therein), and that the agreement between the companies placed the entire tax liability on the Terminal, was sufficient to place in issue the allowance of any depreciation deduction allowable to any of the companies which would affect this one gross and net income. As said in Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 291, 55 S.Ct. 158, 159, 79 L.Ed. 367: "The purpose of the section [allowing consolidated returns] was to provide a method of computing the tax upon the true net income of what is

in practical effect a single business enterprise, with substantially common ownership, as though it were that of a single taxpayer, despite the fact that it is carried on by separate corporations whose tax would otherwise be independently computed."[1] The depreciations here are current deductions occurring during the period of consolidated returns and are applied in the years in which they occurred.

Since the Commissioner had allowed these deficiencies and was seeking to increase the tax by the affirmative claim that they should not have been allowed, the burden was upon him to sustain both that there were no allowable deductions for the current years to any of the companies and that the amounts thereof (if such were allowable) were not as claimed by the taxpayer and as had been allowed by him. If he should fail in carrying this burden in both these respects, the allowed amounts would have to stand as proper.

## II. Depreciations.

It is, of course, clear that the main taxpayer would not have been entitled to claim these depreciations had it made a separate tax return because the properties did not belong to it and there was no basis for depreciation to it merely because it was the lessee thereof. Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720. Whether the lessors-owners were entitled to such depreciation depends here upon the construction of the provision in the lease above quoted. Under that provision the lessee was required to "maintain and keep the premises * * * in good condition, and make all necessary repairs and renewals of the same." It is obvious that the requirements to maintain and keep in good condition and to make necessary repairs would not cover depreciation through obsolescence. The requirement which is of controlling importance here is that of making "all necessary * * * renewals." When the character of this property—particularly some of it which included a bridge across the Mississippi River—is considered and the uncertain term of these leases is kept in mind, "renewals" can hardly be construed as meaning complete replacements. This conclusion is much fortified by the limitation of the renewals to "necessary" renewals. The proper construction should be that this provision in the leases requires such renewals as will keep the property in good workable condition for the purposes for which it was constructed and was to be used under the lease. Obviously, this would not include depreciation arising out of obsolescence. Since the Commissioner has failed to show the cost of the property, the probable useful life thereof, or the extent of the actual renewals made by the lessee, there is a failure of proof that depreciation should not be allowed.

The Commissioner insists that even though the Board be sustained in finding that depreciations should be allowed, yet the case should be remanded to the Board to determine the exact amounts of such depreciation. This position is erroneous. The matter before the Board was not the abstract legal question as to whether depreciations were allowable. The issue was whether depreciations which had been allowed in specific amounts had been improperly allowed. What the Commissioner and the taxpayer were disputing and what the Board was to determine was whether the deficiencies claimed by the Commissioner existed so that the amount of tax due might be definitely determined. The controversy was not at all in the nature of a declaratory judgment.

The determination of the Board should be and is affirmed, and the petition to review dismissed.

WOODROUGH, Circuit Judge, dissents.

---

[1] The provision as to consolidated corporate returns came into the federal income statutes as section 240 of the Revenue Act of 1918 (40 Stat. 1057, 1081). As to that section, Senate Report No. 617, p. 9, 65th Congress, 3d Session, stated the main purpose as follows: "While the committee is convinced that the consolidated return tends to conserve, not to reduce, the revenue, the committee recommends its adoption not primarily because it operates to prevent evasion of taxes or because of its effect upon the revenue, but because the principle of taxing as a business unit what in reality is a business unit is sound and equitable and convenient both to the taxpayer and to the Government."