### FORRESTER BOX CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 12072.

Circuit Court of Appeals, Eighth Circuit.

Nov. 4, 1941.

Rehearing Denied Nov. 21, 1941.

John H. McEvers, of Kansas City, Mo. (H. J. Plagens, Reece A. Gardner, and John M. Phillips, all of Kansas City, Mo., on the brief), for petitioner.

F. E. Youngman, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Newton K. Fox, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals determining deficiencies in the income and excess profits taxes of the petitioner for the year 1935. In 1929 the petitioner sold for $128,571.36 certain machinery and equipment which it had acquired in 1922 at a cost of $128,571.-36. The purchaser of the machinery and equipment paid to the petitioner $12,000 of the purchase price in the year 1935. The petitioner in its income tax return for that year did not include this amount in taxable income. The respondent included it in taxable income and determined deficiencies accordingly. The petitioner appealed to the Board, contending that the sale had resulted in no taxable gain. The Board ruled that the respondent's determination must be sustained because of the failure of the petitioner to prove the amount of depreciation allowable with respect to the machinery and equipment from the time of its acquisition to the time of its sale, which was essential to a determination of the basis for computing gain or loss on the sale.

The facts are not in dispute. In connection with a consolidation or merger into the General Box Corporation, in the year 1922, of a number of box manufacturing companies, including the Forrester-Nace Company, of Kansas City, Missouri (hereinafter called the Nace Company), petitioner in that year acquired the plant, machinery and equipment of the Nace Company in consideration of a surrender of sixty per cent of the capital stock of that company and the assumption by petitioner of its liabilities. The machinery and equipment represented a cost and agreed value of $128,571.36. The petitioner immediately leased to the Nace Company the plant and equipment for a term of ten years from March 1, 1922, with an option to renew the lease for an additional term of fifteen years. The rental was based upon the agreed value of the plant and the agreed value of the machinery and equipment. The rent base for the machinery and equipment was $128,571.36, and the annual rental charge attributable to machinery and equipment was seven per cent of that amount. By the terms of the lease, the Nace Company was to pay taxes on the leased property, to carry insurance upon it for the lessor, and, at the termination of the lease, to return it in as good order as when received, reasonable wear and tear excepted. By a supplemental agreement made at the same time, it was provided that the petitioner could, at any time during the term of the lease, convey "all, but not less than all" of the leased property to the Nace Company for Class A preferred stock of the General Box Corporation equal at par to the agreed value of the leased property; and that the Nace Company could at any time during the term of the lease purchase "all, but not less than all" of the leased property for cash at its agreed value. By the terms of the supplemental agreement, the lessee was permitted to change any of the leased machinery and to install additional machinery, such machinery to remain the property of the lessee, but, in that case, if the new machinery was designed to accomplish the same function as the machinery which it replaced, the lessor was to have the right, on the termination of the lease, "to purchase such replacement machinery for an amount in cash equal to the sum by which the appraised value, at the termination of said lease, of such replacement machinery exceeds the value of the removed machinery * * *."

The three stockholders of petitioner were the same three men who were the stockholders and officers of the Nace Company. After the acquisition by petitioner of the assets of the Nace Company, the outstanding capital stock of that company was sold to the General Box Company, a wholly owned subsidiary of the General Box Corporation, in accordance with the merger plan. D. Bruce Forrester, a stockholder of the petitioner and a former stockholder

of the Nace Company, became president and manager of that company. The Nace Company continued in the box manufacturing business. D. Bruce Forrester was interested in seeing that the machinery and equipment leased to the Nace Company was kept in repair and that its worn parts were replaced, so that there would be no depreciation in its value. From 1922 to 1929, the Nace Company had from four to six men repairing and maintaining the leased machinery and equipment. They rebabbitted bearings and repaired and replaced worn parts such as mandrels, bearings, knives and heads. They added other parts to the machinery with which it had not originally been equipped, so that the machines were at all times kept up to their greatest efficiency. The cost of such maintenance, repairs, replacements and improvements was borne by the Nace Company, and amounted to between $15,000 and $20,000 a year. It is possible, by making repairs, replacements and additions to parts of woodworking machinery, to sustain or increase its value, and that was done with respect to the machinery and equipment leased by petitioner to the Nace Company.

Petitioner sold the leased machinery and equipment to the General Box Company on July 1, 1929, for $128,571.36, payable $25,285.91 in cash and credits, and $103,285.45 in monthly installments of $1,000 each commencing July 1, 1929.

During the years 1922 to 1929 the petitioner had claimed in its income tax returns, and had been allowed, deductions for depreciation in the leased machinery and equipment as follows: $444.51 in 1922, $418.29 in each of the years 1923 to 1925 inclusive, and $197.51 in 1926; or a total of $1,893.89. In the year 1929, petitioner received on account of the sale price of the machinery and equipment, $31,285.91. In its income tax return for that year it included this amount as a taxable gain. The Commissioner determined that $14,979.-69 of the amount was a taxable gain, and allowed depreciation on machinery and equipment of $3,322.79. In the year 1935 the petitioner received twelve installments of $1,000 each on account of the sale price of the machinery and equipment. This $12,000 the petitioner did not include as a taxable gain in its income tax return for the year 1935. The respondent determined that it was taxable income and determined deficiencies accordingly. At that

time the respondent was of the opinion that the Nace Company in 1922 had distributed to its stockholders its plant, machinery and equipment in redemption of $60,000 of its capital stock, and that the plant, machinery and equipment in 1922 had a value of only $44,021.37. In the respondent's deficiency letter he stated:

"* * * It seems that instead of your being entitled to a stepped-up value the assets including notes and receivables, real estate, equipment, etc., should be reduced to $60,000.00, the amount paid for the stock surrendered by the stockholders. If the lessee had during the years 1922 to 1929 made such extensive replacements as to create a value of $128,571.36 on machinery which at the end of February, 1922, was included in a book value of $44,021.37 for land, buildings, equipment, etc., and which assets together with receivables and investments were turned over to the stockholders for $60,000.00, it would seem that the entire profit is taxable. Consequently, the entire amount received in 1935 has been included in taxable income, since the entire cost had been returned to you in depreciation allowances taken and allowed prior to 1935 and the basis to you at the time of the sale was zero."

The petitioner then appealed to the Board of Tax Appeals, asserting that the cost basis for determining gain upon the sale made in 1929 was $128,571.36, the cost of the machinery and equipment to petitioner in 1922; that the Nace Company, under its lease, was obligated to and did repair and replace the machinery and equipment "at a cost in excess of depreciation allowable under the federal income tax laws then in force," and that the petitioner realized no taxable gain on the sale of its machinery and equipment on July 1, 1929.

Before the Board, the repondent took the position that the petitioner had acquired the assets of the Nace Company in a nontaxable reorganization, and that the basis for determining gain was therefore the cost of the machinery and equipment to the Nace Company at the time it transferred these assets to petitioner in 1922. The Board decided that the respondent was clearly wrong about that, since, in a prior controversy between the same parties, the Board had decided that the transaction by which the assets of the Nace Company were acquired by petitioner was a taxable exchange (Forrester Box Co. v. Commissioner, 25 B.T.A. 128), and that the Board's de-

cision in that case had become final and conclusive. The Board rejected the petitioner's contention that the basis for determining gain from the sale made in 1929 was $128,571.36, the cost to the petitioner of the machinery and equipment in 1922, less $1,893.89, the total amount of depreciation taken by petitioner during the years 1922 to July 1, 1929. The Board ruled that the lawful basis for determining gain was $128,571.36 less whatever depreciation was allowable during the years 1922 to July 1, 1929. The Board held that the burden of showing the amount of allowable depreciation was upon the petitioner, and that, since it had failed to sustain the burden, the Board had no alternative but to approve the respondent's determination.

The Revenue Act of 1921, c. 136, 42 Stat. 227, 254, 255, provided, with reference to deductions allowed corporations, as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

* * * * *

"(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * *"

All of the federal income tax laws in effect from 1922 to 1929 contained similar provisions.

The Revenue Act of 1928, c. 852, 45 Stat. 791, provided:

"Sec. 111. Determination of Amount of Gain or Loss

"(a) Computation of Gain or Loss. Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized.

"(b) Adjustment of basis. In computing the amount of gain or loss under subsection (a)—

* * * * *

"(2) The basis shall be diminished by the amount of the deductions for exhaustion, wear and tear, obsolescence, amortization; and depletion which have since the acquisition of the property been allowable in respect of such property under this Act or prior income tax laws; * * *."

"§ 113. Basis for Determining Gain or Loss

"(a) Property Acquired After February 28, 1913. The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; * * *."

"§ 114. Basis for Depreciation and Depletion

"(a) Basis for Depreciation. The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property." 26 U.S.C.A. Int.Rev.Acts, pages 376, 380, 383.

We agree with the Board that the machinery and equipment in suit was depreciable property in respect of which depreciation in the years 1922 to 1929 was allowable, and that the statutory and only lawful basis for determining gain upon the sale of this property in 1929 was its cost to petitioner in 1922 less allowable depreciation.[1]

We also agree with the Board that the obligation of the Nace Company under the lease to return the leased machinery and equipment at the termination of the lease in as good condition as when received, and the repair, maintenance and improvement of the leased machinery and equipment by the Nace Company, did not prevent depreciation from becoming "allowable" in respect of such property. This case is not ruled by those cases in which it has been held that where a lessee is obligated by the terms of a lease to repair, renew and replace the leased property, the lessor may not take deductions for depreciation of the property so leased.[2]

---

[1] United States v. Ludey, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054; Jones v. Commissioner, 8 Cir., 72 F.2d 114, certiorari denied 294 U.S. 716, 55 S.Ct. 515, 79 L.Ed. 1249.

[2] See Weiss v. Wiener, 279 U.S. 333, 335–337, 49 S.Ct. 337, 73 L.Ed. 720; Commissioner v. Terre Haute Electric Co., Inc., 7 Cir., 67 F.2d 697, 698, 699; Georgia Ry. & Electric Co. v. Commissioner, 5 Cir., 77 F.2d 897, 898; Terre Haute Electric Co., Inc., v. Commissioner, 33 B.T.A. 975, 985. See and compare, Helvering v. Terminal Railroad Association of St. Louis, 8 Cir., 89 F.2d 739, 742.

 We also agree with the Board that the provision of the supplemental agreement which gave the petitioner the right during the term of the lease to sell its property to its lessee for $128,571.36 in preferred stock of the General Box Corporation did not have any effect upon the amount of allowable depreciation.

 It is apparent that the petitioner's evidence was directed toward proving the nonexistence of actual depreciation, and not toward proving the amount of allowable depreciation. The petitioner demonstrated that the respondent's determination was based on an erroneous theory, but it failed to prove, as the Board has pointed out, the amount of depreciation which was allowable from 1922 to 1929 with respect to the machinery and equipment. The Board was of the opinion that a far greater depreciation was allowable than the petitioner had taken. In effect, the Board ruled that, while the respondent's determination, which had been appealed from by the petitioner, was based on an utterly untenable theory, the petitioner must accept that determination because of its failure to show that its own theory as to the basis for determining gain on the sale of the machinery and equipment in 1929 was correct.

It is obvious now that both the respondent and the petitioner were shooting wide of the mark in the proceedings before the Board. It is also apparent that if the Board's order is affirmed, the taxpayer will, in all probability, be required to pay taxes in an excessive and arbitrary amount. While it may be true, as the Board remarks, that allowable depreciation on $128,000 worth of machinery during 7½ years must have exceeded $1,893.89, it would seem to be equally apparent that the allowable depreciation on such machinery would not have been as great as $128,000. Under the circumstances, we think that it was the duty of the Board, after it had decided what the proper basis was for determining gain, to afford the petitioner an opportunity to show what the allowable depreciation on the machinery and equipment was from the time it acquired it up to July 1, 1929. See and compare, Helvering v. Taylor, 293 U. S. 507, 515, 516, 55 S.Ct. 287, 79 L.Ed. 623; Clements v. Commissioner, 8 Cir., 88 F.2d 791, 793; Johnson v. Commissioner, 8 Cir., 88 F.2d 952, 956; National Lumber & Tie Co. v. Commissioner, 8 Cir., 90 F.2d 216, 219.

The decision of the Board of Tax Appeals in so far as it constitutes a determination of the basis for ascertaining gain or loss on the sale of the machinery and equipment on July 1, 1929, is affirmed. The case is, however, remanded to the Board with directions to afford the petitioner an opportunity of showing, if it can, the amount of allowable depreciation on the equipment and machinery from the time of its acquisition to July 1, 1929, and thus to enable the Board to determine what part of the $12,000 received by the petitioner in 1935 constituted taxable gain. In case the petitioner shall produce evidence which will enable the Board to determine how much of this amount was taxable income and how much return of capital, the Board is directed to redetermine the deficiencies assessed.

**UNITED STATES v. GALLO.**
**No. 69.**

Circuit Court of Appeals, Second Circuit.
Nov. 10, 1941.