## ALASKA REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9646.

Circuit Court of Appeals, Sixth Circuit.

March 22, 1944.

Robert S. Marx, of Cincinnati, Ohio, (Frank E. Wood, Robert S. Marx, G. A. Ginter, Carl Runge, Frank E. Wood, Jr., and Nichols, Wood, Marx & Ginter, all of Cincinnati, Ohio, on the brief) for petitioner.

Lyle M. Turner, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Newton K. Fox, all of Washington, D. C., on the brief), for respondent.

Before HICKS, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Petitioner, a taxpayer owning, and having all its capital invested in buildings and equipment, consisting of a department store, hotel, garage, and a warehouse, leased its properties for 99 years, with a provision that the lease was renewable forever. The lessee covenanted to keep the property in good repair and to replace all or any part thereof whenever necessary. Respondent, Commissioner of Internal Revenue, disallowed deductions from income taken by petitioner for depreciation, including obsolescence, for the years 1938-1940, inclusive, and assessed deficiencies, on the ground that such depreciation was borne by the lessee. Petitioner sought redetermination of the deficiencies, which was denied by the Tax Court of the United States.

The statute provides that in computing net income, there shall be allowed as deductions from gross income: "Depreciation. A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * *"[1]

Petitioner claims that its property is of a depreciable nature, subject to obsolescence, and that it is entitled under the foregoing section of the statute, to a reasonable allowance therefor.

In Helvering v. Terminal R. Ass'n of St. Louis, 8 Cir., 89 F.2d 739, it was held that the obligation of a lessee to maintain and keep premises in good condition and make all necessary repairs and renewals on the property, did not cover depreciation through obsolescence. Subsequently, the same court, commenting on its decision in the foregoing case, in discussing a similar situation, said in St. Paul Union Depot Co. v. Commissioner, 123 F.2d 235, 238:

"It seems improbable that the tenants, by agreeing to bear the cost of preserving the property and of repairs and renewals to the terminal facilities, intended to bind themselves to replace the present depot at the end of its useful life or to make good to the petitioner losses caused by the exhaustion and obsolescence of that structure. Our conclusion in this regard is in accord with the decision of this Court in Helvering v. Terminal Railroad Association of St. Louis, 8 Cir., 89 F.2d 739, * * *. It was held that that lease did not require the lessees to completely replace leased structures, but meant that the leased properties were by repairs and renewals to be kept in good operating condition and that this obligation of the lessees would not prevent

[1] Section 23(l) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 1938, c. 289, 52 Stat. 447, 26 U.S.C.A. Int.Rev. Code, § 23(l).

the lessor from taking deductions for depreciation."

Where it appears that a lease of railroad track material did not obligate the lessees, either to return the property in as good condition as when received, or pay a reasonable allowance for exhaustion, wear and tear, and obsolescence, the lessor is entitled to a deduction for depreciation. Gulf, Mobile & Northern R. Co. v. Commissioner, 5 Cir., 83 F.2d 788, certiorari denied 299 U.S. 574, 57 S.Ct. 38, 81 L.Ed. 423. In several other cases before the Board of Tax Appeals, the criterion mentioned in the Gulf case, was emphasized. A lessor was not deprived of a deduction for depreciation where there was no provision in the lease for the return of the property in the same condition in which it was taken over by the lessees. Richmond Belt Ry. Co. v. Commissioner, 13 B. T. A. 1291. And where lessees were not required to pay cash to the lessors at the end of the lease, or at any other time, to offset depreciation, and were not required to replace, at the termination of the lease, the partially worn out buildings with new ones, it was held that the lessor was entitled to depreciation. Terminal Realty Corp. v. Commissioner, 32 B. T. A. 623. A requirement on the part of the lessee, to maintain and keep premises and every part thereof in good condition, and to make all necessary repairs and renewals, did not offset the gradual wearing out of the property; and a lessor, under such a lease, was entitled to a deduction for depreciation. Terminal R. Ass'n of St. Louis v. Commissioner, 33 B. T. A. 906. Where the lessee, at the expiration of the lease, was bound to return to the lessor its plant, business and assets, in the same condition and at as great an actual value as when received, a deduction for depreciation by the lessor was denied. Appeal of A. Wilhelm Co., 6 B. T. A. 1.

The obligation on the part of the lessee to make repairs and renewals, in the above cases, did not deprive the lessor of deductions for depreciation, including obsolescence. Much is made of the provision in the lease that the lessee in the instant case was required to repair the buildings and improvements and "replace all or any part thereof whenever necessary." In the Terminal Realty case, supra, the lessee was, likewise, obliged to make "necessary repairs and *replacements*," but a de-

duction for depreciation was allowed to the lessor. The distinction which is sought to be drawn by the Commissioner, that the lease in the Terminal case covered a period less than the useful life of the property, seems immaterial. The Tax Court was of the opinion that, if the property were ever returned to the lessor, it would then be "in as good, and probably more valuable condition than when leased." We fail to see how this follows from the lease stipulations. Loss from exhaustion, ordinary wear and tear, and obsolescence, still rests upon the lessor. There was no provision in the lease whereby the lessee was obligated to pay the lessor, at the termination of the lease, for any losses suffered through depreciation, nor an obligation to return property of the same value as originally leased. The lessee's obligation to repair and replace all or any part of the premises *whenever necessary* is, surely, not equivalent to agreeing that property of the same value, as originally leased, will be surrendered to the lessor at the termination of the lease. It could not reasonably be supposed that, under the above provision, the lessor could compel the lessee to return to it replaced buildings equal to the value of the properties originally leased. The requirement to replace whenever necessary, does not mean to replace, whenever necessary to save the lessor from loss arising out of exhaustion, wear and tear, and obsolescence, but rather to replace when necessary for the use of the premises in the operation and conduct of the business. The lessor was entitled to a deduction for depreciation, including obsolescence.

In denying the petitioner's claim for depreciation, the Tax Court based its decision largely upon the authority of Atlantic Coast Line R. Co. v. Commissioner, 4 Cir., 81 F.2d 309, 310, certiorari denied 298 U.S. 656, 56 S.Ct. 676, 80 L.Ed. 1382, in which it was said that "where property is leased for a long term of years and the lessee covenants to maintain, repair, and renew the property, the lessee is not entitled to an allowance for depreciation because it has invested no capital in the property. * * * In respect to the lessor under such a lease, the decisions are also unanimous to the effect that it is not entitled to an allowance for depreciation because it has sustained no loss, in view of the fact that the lessee has assumed an obligation to maintain, repair, and renew."

Since our opinion calls for reversal of the decision of the Tax Court, it appears proper to discuss the Atlantic case, and the authorities upon which decision was therein reached. That case was concerned with railroad properties which were leased for 999 years. Under the terms of the lease, the lessee was required to maintain, repair, renew, and replace the leased property, so that the same should, at all times, be in substantial repair, working order and condition. The lessee sought to deduct an allowance for depreciation with respect to the property, in which it had no capital investment. The lessor, also, "in the alternative," sought an allowance for depreciation.

The lessee's claim was denied on the authority of Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720, and New York Cent. R. Co. v. Commissioner, 2 Cir., 79 F.2d 247, certiorari denied, 296 U.S. 653, 56 S.Ct. 370, 80 L.Ed. 465. In the Weiss case, involving a lessee's claim to depreciation, Justice Holmes emphasized that such lessee had made no capital investment in the property on which it claimed allowance for depreciation. The New York Central case similarly involved a lessee's claim for depreciation, and was decided upon the authority of Weiss v. Wiener, supra, and the claim denied.

With regard to the lessor's claim for depreciation in the Atlantic case, which bears upon petitioner's similar claim in the controversy before us, denial of the claim was based on the authority of Commissioner v. Terre Haute Electric Co., 7 Cir., 67 F.2d 697, certiorari denied 292 U.S. 624, 54 S.Ct. 629, 78 L.Ed. 479, and Georgia Ry. & Electric Co. v. Commissioner, 5 Cir., 77 F.2d 897, certiorari denied 296 U. S. 601, 56 S.Ct. 117, 80 L.Ed. 426.

The Terre Haute case is easily distinguishable from the instant case. There, the court denied a lessor a deduction for depreciation; but the lease in controversy provided that the lessee would, during the term of lease, renew, repair, and replace the property, so as to maintain and keep the premises in as good order, repair, and condition as they then were, and in their then state of efficiency, and at the termination of the lease, as the court expressed it [67 F.2d 698], *"the value of the lessor's property at the time the lease was executed should be restored to it at the time the lease expired."* In the instant case, the lease only provided that the lessee would

"keep the buildings and improvements on the premises in good order and repair, and at its own expense, replace all or any part thereof whenever necessary." It would seem obvious that if the lessor received back from the lessee, at the termination of the lease, the value of the property, as of the time of the execution of the lease, such lessor would suffer no loss from wear and tear, or obsolescence.

Georgia Ry. & Electric Co. v. Commissioner, supra, also relied upon in the decision of the Atlantic case, denied deduction to a lessor on a claim for depreciation, including obsolescence. The claim for depreciation, resulting from exhaustion, wear, and tear, was denied, inasmuch as the lease provided that the lessee would "renew, repair and replace the same, so as to maintain and keep the demised premises in as good order, repair and condition as the same now are and in their present state of efficiency." Under these provisions, the court held that "the loss resulting from renewals and replacements, and from the exhaustion, wear, and tear of the property generally, was to be borne, not by the lessor, but by the lessee. * * * There is no evidence whatever to sustain the contention of the petitioners that the lessor, though not required by the lease to do so, bore the losses resulting from exhaustion, wear, and tear, and required the lessee to bear only the cost of current maintenance and repairs." A claim for depreciation from obsolescence was also denied because it was included within the general term "depreciation"—along with exhaustion, wear and tear—and since the petitioner was not entitled to the latter, it could not be ascertained what amount was allocable to obsolescence.

It is to be observed that the obligation of the lessee in the Georgia Ry. & Electric case, was much more extensive than in the case before us, and, in that case, the stipulation that the lessee was to renew, repair, and replace the property so as to maintain and keep it in as good order, repair, and condition as originally, and in its original state of efficiency, contrasts strongly with the lessee's comparatively minor obligation, in the instant case, to keep the buildings and improvements "in good order and repair and * * * replace all or any part thereof whenever necessary." The latter has to do rather with current maintenance and repair. There is no requirement or implication in

the language of the lease in the instant case, that the lessee is obliged to replace property which has undergone progressive diminution of value over the years as a result of general, gradual wear, tear, and exhaustion or obsolescence. Furthermore, the Georgia case may be considered as authority for the proposition that a lessor, in such a long-term lease, is entitled to a deduction for obsolescence when there is evidence thereof, even though such lessor might not be entitled to depreciation for wear and tear.

It may be observed that in the Atlantic case, the court remarked that the contention that an allowance for depreciation must be made either to the lessor or the lessee, was rejected in New York Cent. R. Co. v. Commissioner, supra. But, in the latter case, which is here also relied upon by counsel for the Commissioner, it was only held that, under the circumstances of that case, neither the lessor nor the lessee was entitled to deduction for depreciation—the lessor, because by the terms of the lease, it would receive equivalent property upon the termination of the lease —the lessee, because it had made no capital investment in the property. This is not to say that a lessor who bears the losses resulting from exhaustion, wear and tear, and obsolescence, is not entitled to deduction for depreciation.

It must be conceded that the opinion in the Atlantic case, in its language, tends to support the position of the Commissioner in this case. There is, however, the distinction that one case involves railroad equipment, while the case before us is concerned with buildings and improvements. The court may have considered that the lessee's obligation to maintain, repair, renew, and replace, leased railroad equipment, so that the same would at all times be in substantial repair, working order, and condition, is equivalent to maintaining the equipment in such a state that the lessor would suffer no loss by depreciation; and although, in the Atlantic case, the lessee was, at the termination of the lease, obliged to deliver back the property

"in good order and condition, *ordinary wear and tear excepted*," it may have been concluded that, in the case of *equipment*, required to be maintained in substantial repair, working order, and condition, by renewals and replacements, there would be such uncertain and imperceptible depreciation as would not reasonably justify a deduction for depreciation.

■ With regard to any supposed approval, by denial of certiorari (298 U.S. 656, 56 S.Ct. 676, 80 L.Ed. 1382), of the broad rule laid down in the Atlantic case, to the effect that neither the lessor nor lessee is entitled to depreciation under the type of lease there—and here—in controversy, no weight attaches thereto; for, as has been repeatedly said, denial of certiorari imports no opinion on the merits. Moreover, it may be remarked that when the case was first before the Board of Tax Appeals, and depreciation was denied the lessor, the Board pointed out that the amount of such claimed loss *had neither been alleged nor shown* (Atlantic Coast Line R. Co. v. Commissioner, 31 B. T. A. 730, 735); and later, in another case, the Board, in distinguishing the Atlantic case, repeated this observation, and further remarked that the claim of the lessor to depreciation in that case, appeared to have been an afterthought. Terminal Realty Corp. v. Commissioner, supra. In denying certiorari in the Atlantic case, the Supreme Court may well have taken the foregoing circumstances into consideration. We do not consider the Atlantic case as here applicable in requiring a determination that the lessor in the case before us, is to be denied deduction for depreciation.

No controversy as to facts or proof is presented on this appeal. The issue of law relates solely to the right of a petitioner to a deduction for depreciation, including obsolescence. We have determined that petitioner is entitled to such a deduction.

Accordingly, the judgment of the Tax Court of the United States is reversed, and the case remanded for further proceedings in conformity with this opinion.