The NORTH CAROLINA MIDLAND RAILWAY CO.

v.

UNITED STATES.

No. 175-54.

United States Court of Claims.
July 16, 1958.

James C. Gidding, Washington, D. C., for plaintiff. Seddon G. Boxley, Henry L. Walker and William D. McLean, Washington, D. C., were on the brief.

June A. Murray, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for the defendant. James P. Garland and David R. Frazer, Washington, D. C., were on the brief.

HOLTZOFF, District Judge, sitting by designation, delivered the opinion of the court:

The question presented in this case is whether the owner of real property, who leases it by a long term lease is entitled to deduct depreciation on the property in his income tax returns, if the tenant is required by the terms of the lease to preserve, replace, renew and maintain the property, and to return it at the end of the term in at least as good condition as it was at the beginning.

The plaintiff, North Carolina Midland Railway Company, leased its railway on a long term basis to the Southern Railway Company. The lessee undertook to preserve, replace, renew and maintain the railroad and property, and to return it in at least as good condition as it was at the beginning of the term. The plaintiff filed a claim with the Collector of Internal Revenue for a refund in connection with its income tax returns contending that it was entitled to an allowance for depreciation. The claim was denied on the ground that in view of the foregoing terms of the lease, the plaintiff sustained no loss by way of depreciation.

The pertinent facts are stipulated and may be summarized as follows. On February 5, 1916, the plaintiff, which owned a line of railroad extending from Winston-Salem, North Carolina, to Mooresville, North Carolina, leased its property to the Southern Railway Company for a term of six years. The demised property comprises the entire railway and property of the lessor, including roadbed, track, bridges, depots, stations, and all buildings and structures of every description, located on or used in connection with the railroad. The lessee covenants to pay rental specified in the lease, and in addition agreed as follows:

"5. That it, at its own cost, charge and expense, shall and will so preserve, replace, renew and maintain the railroad and property hereby demised, and all additions, amendments and improvements thereof, that if and when in any manner or for any cause the said railroad property shall revert to the possession of the Midland Company, its successors or assigns, the said railroad property and its appurtenances, when it shall so revert, shall be in at least as good condition as at the beginning of the term hereunder."

The lease contains a provision to the effect that title to all improvements, betterments, replacements and additions which might be put upon or made to the demised premises by the lessee, should pass to the lessor. On the other hand, the lessor covenants to repay and reimburse the lessee for any and all expenditures made by the latter and chargeable to capital account for any and all additions and betterments to the property. In addition, the lease contains a provision that the lessor might terminate the tenancy in the event that the lessee committed a breach of the agreement. On March 15, 1921, a supplemental agreement was entered into between the parties extending the term of the lease so that it should continue in effect indefinitely, but was to be subject to termination by either party on thirty days' notice. Thus the lease became one in perpetuity subject to termination at the election of either party, or by breach on the part of the lessee.

On March 15, 1948, the plaintiff filed its usual income tax return for the calendar year 1947, with the Collector of Internal Revenue, Baltimore, Maryland.

In its return the plaintiff made no deduction for depreciation. On March 8, 1951, the plaintiff filed a claim for refund in the sum of $1,732.77, maintaining that it was entitled to charge off depreciation, and that if proper depreciation had been deducted and the amount of the tax recomputed accordingly, the plaintiff would be entitled to a refund in the above amount. On May 15, 1952, the claim for refund was disallowed, and this suit followed.

The taxpayer's rights are governed by the Internal Revenue Code of 1939, the pertinent provisions of which read as follows:

"§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:

\*   \*   \*   \*   \*   \*

"(1) *Depreciation.* A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income." 26 U.S.C.A. § 23.

The Government contends that the plaintiff did not sustain any depreciation, because the lessee undertook to restore the property at the end of the term "in at least as good condition as at the beginning of the term", and in the interim to preserve, replace, renew and maintain the demised railroad and property. It is urged that in the light of this provision, the property would be as valuable at the end of the term as it was at the beginning, and therefore, will not depreciate from the standpoint of its owner.

Property by its very nature has a limited span of life. Gradual deterioration in the condition of property that is inherent in its very nature progressively diminishes its value. Of necessity, depreciation comprehends not only physical impairment, but also obsolescence. At the end of the period of its useful life, the property will presumably have no value and must be replaced. Accordingly, depreciation is computed from year to year on a proportionate basis based upon the estimated length of life of the property, in order that at the end of that period a fund will have accumulated with which to replace the property in its entirety.

Mr. Chief Justice Hughes in Lindheimer v. Illinois Bell Tel. Co., 292 U.S. 151, 167, 54 S.Ct. 658, 664, 78 L.Ed. 1182, defined depreciation as follows:

"Broadly speaking, depreciation is the loss, not restored by current maintenance, which is due to all the factors causing the ultimate retirement of the property. These factors embrace wear and tear, decay, inadequacy, and obsolescence."

A covenant on the part of the lessee by which he undertakes an obligation to keep the property in a proper state of repair, and to make replacements in order that at the end of the term he may restore the property in as good condition as that in which he received it, does not mean that the property will not depreciate at all, and that it will have the same value at the end as at the beginning of the term. To illustrate by a supposititious case, if A leases a building to B for thirty years, and B covenants to make all necessary repairs and to preserve, replace, renew and maintain it, in order that it may be in at least as good condition at the end as at the beginning of the term, nevertheless, when the property at the end of the thirty-year period reverts to A, the latter will have a building thirty years old. There will have been a constant continuous diminution in the value of the building due to its advancing age, as well as obsolescence caused by the fact that styles and fashions may have changed during the intervening period and improvements may have been introduced in new buildings that detract from the value of a thirty-year old structure. For example, plumbing and electric fixtures of new types may have become fashionable in the interim, making older buildings with equipment of earlier types less

desirable and, therefore, less valuable and less marketable.

■ In the instant case, much of the property consists of various buildings, such as depots, stations, water tanks and the like. All are subject to depreciation and obsolescence, even if they remain in as good condition at the end of the term as they were at the beginning. Improvements in design, and development of more desirable types of equipment may detract from their value. It may well be that the roadbed does not suffer any depreciation if it is properly maintained, as the lease requires. To some extent this may be true of the tracks, since it is reasonable to assume that in fulfilling its obligations, the lessee will periodically replace the rails. On the other hand, new and perhaps heavier types of rails may be devised during the intervening period, that are more suitable to changes in rolling stock, thereby rendering the track as originally constructed of less value than it had been. These matters of necessity involve questions of fact.

It follows, hence, that insofar as obsolescence is concerned, there is nothing in the covenant that saves the plaintiff from suffering depreciation in that aspect. This is likewise true of depreciation on buildings. To be sure the life of the buildings may be longer than the average, by reason of the covenant, but manifestly they cannot endure permanently. The extent to which depreciation is suffered in respect to the track is a question of proof.

The conclusion follows, therefore, that the plaintiff is entitled to deduct depreciation on its property in its annual income tax returns, and that it was error on the part of the Commissioner of Internal Revenue to reject the claim for refund.

An analysis of the authorities supports these conclusions. In Helvering v. Terminal R. Ass'n of St. Louis, 8 Cir., 89 F.2d 739, the lessee under a long term lease of railroad property was required to "maintain and keep the premises * * * in good condition, and make all necessary repairs and renewals of the same". In ruling that the lessor was entitled to deduct depreciation in its income tax returns, the court stated (at page 742):

"It is obvious that the requirements to maintain and keep in good condition and to make necessary repairs would not cover depreciation through obsolescence. The requirement which is of controlling importance here is that of making 'all necessary * * * renewals.' When the character of this property —particularly some of it which included a bridge across the Mississippi River—is considered and the uncertain term of these leases is kept in mind, 'renewals' can hardly be construed as meaning complete replacements. This conclusion is much fortified by the limitation of the renewals to 'necessary' renewals. The proper construction should be that this provision in the leases requires such renewals as will keep the property in good workable condition for the purposes for which it was constructed and was to be used under the lease."

In Alaska Realty Co. v. Commissioner of Internal Revenue, 6 Cir., 141 F.2d 675, 153 A.L.R. 901, it was held that the lessor of a group of buildings was entitled to claim depreciation, in spite of the fact that the lessee covenanted to keep the premises in good repair and to replace all or any part thereof whenever necessary. On this point, the Court stated (at page 676):

"Loss from exhaustion, ordinary, wear and tear, and obsolescence, still rests upon the lessor."

In St. Paul Union Depot Co. v. Commissioner of Internal Revenue, 8 Cir., 123 F.2d 235, 238, the lessee undertook to preserve and renew the demised facilities, which included a depot. The court overruled the contention that under this

clause the lessee would absorb depreciation, and made the following comments:

"It seems improbable that the tenants, by agreeing to bear the cost of preserving the property and of repairs and renewals to the terminal facilities, intended to bind themselves to replace the present depot at the end of its useful life or to make good to the petitioner losses caused by the exhaustion and obsolescence of that structure."

Surely it is an immaterial difference that in some cases the lessee covenanted to maintain the property in good condition, whereas in the instant case he undertook to return it in as good condition as it was in the beginning of the term. The difference in the phraseology of the two clauses is only in the degree of emphasis, rather than in their meaning.

The Government relied on two cases, which, however, were decided earlier than those that have just been discussed. Moreover, they hardly support the Government's contention in the case at bar. In Commissioner of Internal Revenue v. Terre Haute Elec. Co., 7 Cir., 67 F.2d 697, the lease required the tenants not only to keep the demised premises in as good condition as they were at the beginning of the term, but also to restore the value of the property at the expiration of the term. Because of this provision, the lessor did not sustain any depreciation.

In Georgia Ry. & Electric Co. v. Commissioner of Int. Rev., 5 Cir., 77 F.2d 897, the court was confronted with a provision similar to that involved in the instant case. The court held, however, that depreciation should be disallowed, merely because the evidence did not indicate how much was allocated to obsolescence and how much to other causes. It intimated that if the proof had been in proper shape, the plaintiff would have been entitled to an appropriate deduction for obsolescence.

In the light of the foregoing considerations, plaintiff is entitled to recover together with interest thereon as provided by law, and judgment will be entered to that effect. The amount of recovery is to be determined pursuant to Rule 38(c) of this court, 28 U.S.C.A.

It is so ordered.

JONES, C. J., and LARAMORE, MADDEN and LITTLETON, JJ., concur.