ZELCO, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93301. Filed May 16, 1963

*David Burstein* and *Robert J. Richards*, for the petitioner.
*J. Frost Walker, Jr.*, for the respondent.

OPINION

RAUM, *Judge:* Respondent determined the following deficiencies in income tax:

| Year ended— | Income tax |
|---|---|
| August 31, 1958 | $62, 343. 89 |
| August 31, 1959 | 138, 732. 04 |
| August 31, 1960 | 46, 851. 98 |

The parties have resolved their dispute in relation to all of the adjustments responsible for this determination, except one, namely, the deduction sought by petitioner with respect to tires that were an integral part of new vehicles purchased by petitioner which it leased to a motor carrier that was obligated to replace tires and parts as they wore out. Petitioner claims the right to allocate a portion of its cost of the vehicles to the tires and to spread that portion over 1 year (the prospective life of the tires), whereas the Government contends that the cost of the vehicles as a whole, including the tires, must be spread over the useful lives of the vehicles, 5 or 6 years. The facts have been stipulated.

Petitioner, a New Hampshire corporation, is engaged in the business of leasing trailers and tractors initially equipped with new tires. In the ordinary course of its business, it purchases new trailers and tractors from the manufacturer and leases them by written lease. All leases have been with the St. Johnsbury Trucking Co.

St. Johnsbury Trucking Co., Inc., is an interstate motor carrier subject to the jurisdiction of the Interstate Commerce Commission. The shares of stock of petitioner and of St. Johnsbury Trucking

Co., Inc., are at least 95 percent owned by three individual stockholders who are brothers.

Each trailer and tractor when purchased new by petitioner comes equipped with new tires, each trailer having eight wheels and eight tires, and each tractor having six wheels and six tires.

The average useful life of new tires on trailers and tractors is 12 months. The useful lives of the trailers and tractors are 5 and 6 years, respectively.

All leases executed in the fiscal years ended August 31, 1956, 1957, and 1960, were for a period of 1 year, and in each lease the lessee was given three successive options to extend the term of the lease for additional periods of 1 year. During those years the lessee exercised its options to extend the term of the leases. In accordance with the requirements of the Interstate Commerce Commission, the leases were executed following an invitation for public bids and were approved by the Interstate Commerce Commission.

Paragraph 4 of the lease agreements provided as follows:

4. The Lessee agrees that it will, at its own expense, during the term specified in Paragraph 1 and any extension thereof, maintain the leased equipment in good operating condition and repair *and will furnish all such tires, tubes, accessories and parts as may be required;* provided, however, that in the event that any of the leased equipment shall, in its opinion, be rendered unfit for further use in its business by reason of damage or destruction, it will, at its option, forthwith (a) replace the same with equipment of like kind and in substantially the same condition as such leased equipment was immediately prior to its damage or destruction, or (b) purchase such leased equipment from the Lessor at its value immediately prior to such damage or destruction, such value to be determined on the basis of its initial cost to the Lessor less depreciation thereon on a four-year straight line basis. [Italic supplied.]

Petitioner is not subject to the jurisdiction of the Interstate Commerce Commission.

Tires on trailers and tractors are interchanged at the discretion of St. Johnsbury Trucking Co., Inc., in accordance with the usual practice of motor carriers to do so for the purpose of prolonging the useful life.

For Federal income tax purposes, the petitioner has followed the practice of writing off the cost of new tires ratably over a period of 12 months. The respondent has disallowed such deductions for the reasons stated in the revenue agent's report referred to in the statutory notice of deficiency. Material excerpts from that report are as follows:

During the years under examination the taxpayer corporation claimed a deduction for the cost of tires which were acquired with the purchase of new trailers and tractors.

In claiming this deduction the taxpayer relied on Revenue Ruling 59-249 which provides the only exception to the general rule that tires are part of the vehicle and not a separate asset.

In view of the following it has been determined that this ruling is not applicable and that the deduction for tire expense would not be allowable.

1. The taxpayer is in the business of leasing trucks and not the motor transportation business.

2. The cost of tires is not a recurring expense. The lease stipulates that the cost of replacing tires must be borne by the lessee.

The deduction claimed for depreciation has been adjusted as follows:

1. The cost of tires, disallowed under item (a) above, has been restored to the cost bases of the equipment.

Rev. Rul. 59–249, 1959–2 C.B. 55, referred to above, is an outgrowth of the decision in *W. H. Tompkins Co.*, 47 B.T.A. 292. In *Tompkins* the taxpayer was itself a common carrier and owned the trucks that it used in its business. The trucks were equipped with tires when acquired by the taxpayer. The average life of the tires was not over 90 days and none lasted more than 6 months. The taxpayer deducted the allocable cost of the tires as a business expense in the year of acquisition of the trucks. The Commissioner disallowed the deduction on the ground that because the tires were an integral part of the trucks as originally purchased the entire cost of the trucks was to be depreciated over the life of the vehicles. In sustaining the taxpayer's position this tribunal recognized that it was dealing with an exceptional situation, stating that every part of the truck's mechanism that might wear out within a year may not be deducted as an expense, but that tires which are ordinarily considered a rapidly consumable part of commercial trucks might be treated as an exception to the usual rule of accounting and, when consumable within the year, allowed as a fully deductible expense in the year the vehicle is purchased. 47 B.T.A. at 294–295. It was thought that to depreciate the tires over the life of the trucks, some 7 to 10 years, would distort income for the year of acquisition when the original tires would be fully consumed (p. 294).

The Commissioner finally accepted the *Tompkins* decision, and ruled, in a case where the taxpayer was engaged in the business of motor freight transportation as a motor carrier, that "the cost of tires and tubes purchased on new commercial trucking equipment and used in motor freight transportation is deductible as ordinary and necessary business expense in full in the taxable year of purchase * * * if in such use they are consumable within that year or their average useful life is less than one year even though it extends in part into the next year." Rev. Rul. 59–249, 1959–2 C.B. 55, 56.

That ruling is severely limited, and to extend it and the *Tompkins* case to the present controversy would merely be an unfortunate and unnecessary demonstration of the validity of the aphorism that "hard cases make bad law." Whatever justification there may have been for singling out tires as an exception to the general rule in *Tompkins*

in order to prevent an alleged distortion of income in that case,[1] it has no pertinence whatever here because the application of the general rule produces no distortion of income in the case before us.

Petitioner in the present case is not the operator of the vehicles in question. It is simply a lessor in circumstances where the lessee is obligated to replace wornout tires. Upon termination of the lease, as extended, petitioner receives back its vehicles equipped with tires. To be sure, such tires will not be new. But, in accordance with the Commissioner's position, petitioner will have had the benefit of depreciation deductions with respect to the entire vehicle, including tires and other parts, over the period of the lease, as extended, and its income will thus be accurately computed. On the other hand, if deduction for the original new tires were allowed for the first year there would be a distortion of petitioner's income. Unlike the taxpayer in *Tompkins*, petitioner was not called upon to replace the tires as they wore out. Here, the taxpayer made an investment in trailers and tractors which it leased. That investment in the vehicles as a whole produced the rental income which petitioner received over a period of some 4 years. In *Tompkins* it may perhaps be said that the owner of the trucks actually sustained the loss of the original tires during the first year. Here, in view of the lessee's obligation to replace tires, petitioner's loss is the difference between the cost of its new equipment and the value of that equipment when returned to it at the termination of the lease; but, as far as petitioner is concerned, that loss occurred ratably over the life of the lease as extended and should be taken as depreciation over such period. It did not occur in 1 year, and to allow a deduction for such loss to be spread over only 1 year would in fact distort petitioner's income. No such circumstances were present in *Herbert Shainberg*, 33 T.C. 241, upon which petitioner relies. Nor is there any support for petitioner's position in *Alaska Realty Co.* v. *Commissioner*, 141 F. 2d 675 (C.A. 6), which it also presses upon us. The question in the *Alaska Realty* case was whether the lessor was to be allowed *any* depreciation upon the leased property; here, petitioner is plainly entitled to depreciate its investment in the entire vehicle, including tires, the only issue being whether it may take a disproportionately large amount in respect of the first year.

*Decision will be entered under Rule 50.*

---

[1] If the theory of the case is valid it is difficult to understand why it is limited to tires. Surely, there are other items such as storage batteries, spark plugs, mufflers, etc., that have shorter useful lives than the vehicle itself, and, by parity of reasoning, it would "distort" income not to spread their allocable costs over their shorter useful lives rather than over the longer life of the vehicle. It is no answer to say that they are part of the truck's mechanism and are interrelated with other parts. If they are easily identifiable and actually wear out earlier than the vehicle itself, then there is in fact the same kind of theoretical distortion of income. Yet the *Tompkins* opinion plainly indicates that the decision is limited to tires. However, as indicated above, even though tires are involved here, there is a crucial difference between *Tompkins* and the present case, because, as will be spelled out more fully hereinafter, there is no distortion of income here and there is therefore no basis flor applying *Tompkins*. *Tompkins* is an extreme case and will not be extended.