ZELCO, INC., Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 6245.

United States Court of Appeals
First Circuit.

May 11, 1964.

David Burstein, Boston, Mass., with
whom Robert J. Richards, Jr., and Hale
& Dorr, Boston, Mass., were on brief, for
petitioner.

Steven Shapiro, Attorney, Department
of Justice, with whom Louis F. Ober-
dorfer, Asst. Atty. Gen., and Lee A.
Jackson and David O. Walter, Attorneys,
Department of Justice, were on brief,
for respondent.

Before WOODBURY, Chief Judge, and
HARTIGAN and ALDRICH, Circuit
Judges.

HARTIGAN, Circuit Judge.

This is a petition by Zelco, Inc., for
review of a decision of the Tax Court of
the United States, entered July 30, 1963,
determining deficiencies in petitioner's
federal income tax liabilities for its tax-
able years ended August 31, 1959 and
1960.

The facts were stipulated. Petitioner,
a New Hampshire corporation, is en-
gaged in the business of leasing trailers
and tractors to St. Johnsbury Trucking
Company, Inc., an interstate motor car-
rier subject to the jurisdiction of the
Interstate Commerce Commission. The
shares of stock of petitioner and of St.
Johnsbury are at least 95 percent owned
by three individual stockholders who are
brothers.

Petitioner purchases the trailers and
tractors new from the manufacturer.
Each trailer and tractor when purchased
comes equipped with new tires, each
trailer having eight wheels and eight
tires and each tractor having six wheels
and six tires. The average useful life of
new tires on trailers and tractors is
twelve months. The useful life of the
trailers and tractors are five and six
years respectively.

Petitioner leases its vehicles only to
St. Johnsbury. All leases executed in the
fiscal years ended August 31, 1956, 1957
and 1960 were for a period of one year,
and in each lease the lessee was given
three successive options to extend the
term of the lease for additional periods
of one year. During these years the
lessee exercised its option to extend the
term of the leases. In accordance with

the requirements of the Interstate Commerce Commission, the leases were executed following an invitation for public bids and were approved by the Commission.

Paragraph 4 of the lease agreements provided as follows:

"The Lessee agrees that it will, at its own expense, during the term specified in Paragraph 1 and any extension thereof, maintain the leased equipment in good operating condition and repair *and will furnish all such tires, tubes, accessories and parts as may be required*; provided, however, that in the event that any of the leased equipment shall, in its opinion, be rendered unfit for further use in its business by reason of damage or destruction, it will, at its option, forthwith (a) replace the same with equipment of like kind and in substantially the same condition as such leased equipment was immediately prior to its damage or destruction, or (b) purchase such leased equipment from the Lessor at its value immediately prior to such damage or destruction, such value to be determined on the basis of its initial cost to the Lessor less depreciation thereon on a four-year straight line basis." (Italics supplied.)

The tires on the trailers and tractors are interchanged at the discretion of the lessee, St. Johnsbury, in accordance with the usual practice of motor carriers to do so for the purpose of prolonging the useful life of the tires.

For federal income tax purposes, petitioner followed the practice of writing off the cost of the new tires ratably over a period of twelve months. In doing so, petitioner relied on W. H. Tompkins Co., 47 B.T.A. 292 (1942) and Revenue Ruling 59–249, 1959–2 Cum.Bull. 55 in which the Internal Revenue Service acquiesced in the Tompkins decision. The Ruling provides that:

"The cost of tires and tubes purchased on new commercial trucking equipment and used in motor freight transportation is deductible as ordinary and necessary business expense in full in the taxable year of purchase and payment (or accrual) if in such use they are consumable within that year or their average useful life is less than one year even though it extends in part into the next year."

Respondent disallowed the deduction and insisted that the tires could not be separated from the vehicles but had to be depreciated as part of and over the useful life of the vehicles. The revenue agent's report stated that "Revenue Ruling 59–249 which provides the only exception to the general rule that tires are part of the vehicle and not a separate asset * * * is not applicable and * * * the deduction for tire expense would not be allowable." The reasons given for the Ruling's inapplicability were: "1. The taxpayer is in the business of leasing trucks and not the motor transportation business. 2. The cost of tires is not a recurring expense. The lease stipulates that the cost of replacing tires must be borne by the lessee." Accordingly, respondent restored the cost of the new tires to the cost bases of the equipment.

On appeal to the Tax Court, it was held that the loss of the tires occurred ratably over the life of the lease as extended and should be taken as depreciation over such period. The W. H. Tompkins case and Revenue Ruling 59–249 were distinguished:

"In Tompkins it may perhaps be said that the owner of the trucks actually sustained the loss of the original tires during the first year. Here, in view of the lessee's obligation to replace tires, petitioner's loss is the difference between the cost of its new equipment and the value of that equipment when returned to it at the termination of the lease; but, as far as petitioner is concerned, that loss occurred ratably over the life of the lease as extended and should be taken as depreciation over such period. It did not occur in one

year, and to allow a deduction for such loss to be spread over only one year would in fact distort petitioner's income."

The question here is whether petitioner-lessor must wait until the termination of a lease extending up to four years, as the Tax Court held, before realizing its full deduction when the asset involved admittedly possessed a useful life of only twelve months. Respondent contends that petitioner cannot take the deduction during the first year of the lease because throughout the full term of the lease, petitioner continued to receive a rental based upon petitioner's "providing new equipment to the lessee, tires as well as trucks and trailers" at the inception of the lease. Also, the fact that the lessee replaced the tires meant that petitioner had to make "no further outlay in order to derive the originally fixed income for the term of the lease."

W. H. Tompkins, supra, established the principle that when the useful life of a rapidly consumable and substantial asset, there specifically tires, has been completed, the taxpayer should be able to regain his costs during the period of that useful life without having to wait until the more endurable vehicle to which the tires were attached has reached the end of its usefulness. In that case the taxpayer was a freight carrier by motor vehicle operating its own motor vehicle equipment. It deducted the cost of the new tires with which the motor vehicles were initially acquired as a business expense in the year of acquisition. The Commissioner opposed this deduction contending that the tires were capital items and the normal income tax method of accounting could not be ignored. The Tax Court, however, concluded at 47 B.T.A. 294 that "to depreciate tires which will be worn out in six months over a period of seven to ten years which, at a rough guess, is the possible life of the trucks, seems a manifest absurdity, and by denying the full deduction of their cost in the year of purchase as an expense, we should, in effect, distort petitioner's income for that year."

In the instant case the tires were fully worn out within twelve months from the inception of the lease. The lessee was then obliged to "furnish all such tires, tubes, accessories and parts as may be required" for the successive terms for which the lease was to be extended. The vehicles would then be returned to petitioner with tires having only a nominal or salvage value. But due to the fact that after the tires were exhausted petitioner would continue to receive income for the use of the vehicles pursuant to the terms of the lease, it was held that petitioner would have to wait until the full term of the lease had expired before he could receive his full depreciation for the tires.

We believe this view gives an undue importance to the lease when in reality the lease is almost irrelevant to the question before us. It is the useful life of the leased property rather than the duration of the lease that should be the determining factor in computing depreciation of the property. Lamson Bldg. Co. v. Commissioner of Internal Revenue, 141 F.2d 408 (6th Cir. 1944).[1] See Treas.Reg. § 1.167(a)–4 (last sentence).[2]

---

[1] "There is intrinsic fairness in basing depreciation upon the single standard of useful life, if we are right in concluding that such standard is, under the regulations, alone applicable. Should the tenant default and the lessor repossess the property, he has not been deprived of his full measure of depreciation allowance, and in the case of a short term lease, the Treasury is not deprived of revenue by an inordinate depreciation rate during the term of the lease. On the other hand, if a new building replaces the old, after invested capital has been fully recovered by depreciation deductions, its value or so much of it as remains after the expiration of a long term lease, is doubtless a gain to the lessor under applicable rules." Id. 141 F.2d at 410.

[2] "* * * Capital expenditures made by a lessor for the erection of buildings or other improvements shall, if subject to depreciation allowances, be recovered by him over the estimated life of the improvements without regard to the period of the lease."

In addition, a lessor may receive a depreciation deduction over the property's useful life although the lessee is charged with the repair, replacement and maintenance of that property. Alaska Realty Co. v. Commissioner of Internal Revenue, 141 F.2d 675 (6th Cir. 1944); Terminal Realty Corporation 32 B.T.A. 623 (1935); see Rev.Rul. 62–8, 1962 Int.Rev. Bull. That the leases were extended by St. Johnsbury and thus the rental for the vehicles continued for three successive terms cannot change the fact that the tires were fully worn out within twelve months from the inception of the lease and under Tompkins petitioner realized a depreciable loss at that time. To hold, therefore, that regardless of the uselessness of the tires, so long as the vehicles themselves were earning income under the lease petitioner would not have yet suffered a loss as to the tires, ignores the right of petitioner as a lessor to recover its costs over the useful life of the leased property, Lamson Bldg. Co. v. Commissioner of Internal Revenue, supra, and erroneously concentrates upon the provision in the lease requiring the lessee to replace the worn out tires. Alaska Realty Co., supra; North Carolina Midland Railway Co. v. United States, 143 Ct.Cl. 30, 163 F.Supp. 610 (1958).[3]

The Tax Court's position is further difficult to uphold due to the fact that one cannot tell how long a lease of the type used by petitioner is going to be. When this was put to government counsel his reply was that the taxpayer must make an initial "realistic determination" of how long the lease was going to last. This seems anything but realistic and quite impractical. How much does the taxpayer depreciate at the end of the first year? If the lease has been renewed it knows it will last at least two years. But does it take one-half, one-quarter, or one-third? This "determination" can be

a heavy, if not impossible, burden to the taxpayer, especially as it is the taxpayer's responsibility "to establish the reasonableness of the deduction for depreciation claimed." Treas.Reg. § 1.167 (b)–(o) (a).

Finally, the Tax Court considered Tompkins an "extreme case" and stated that it would not be extended. But all that was "extreme" in Tompkins was the realization that a part of the cost of an asset may be capitalized and a part deducted as a business expense. The Tompkins view was followed by the Tax Court in Interstate Truck Service, Inc., T.C.Mem. 1958–219, and was finally adopted by the Internal Revenue Service in Revenue Ruling 59–249, although limiting its application to a taxpayer engaged in the business of motor freight transportation. The reasons for the limitation, if any, are not given and the dividing line seems to have been arbitrarily drawn. See Portland General Electric Company v. United States, 189 F.Supp. 290 (D.Ore.1960), aff'd per curiam, 310 F.2d 877 (9th Cir. 1962). The recognized fact that tires are "easily separable and are not a part of the truck's mechanism, closely interrelated with other parts and affected by those parts in their wear and tear"[4] and have a far shorter life than the vehicle itself is as true for a leased truck as it is for one that is not leased. Therefore, we can see no valid reason why the lessor in this case should not be allowed the same deduction as was allowed in Tompkins. The mere fact that one personally engages in motor freight transportation and the other leases the vehicles which are used in such business does not seem to be a decisive factor. The same type of asset is involved in both cases and an equal loss is suffered by both owners at the end of the useful life of the asset. See Commissioner of Internal Revenue v. Moore, 207 F.2d 265, 268 (9th Cir. 1953),

---

**3.** It is interesting to note that under the authority of Rev.Rul. 59–249, supra, St. Johnsbury here could have deducted the costs of at least three sets of tires during the four year term of the lease while

petitioner would not have yet recovered the cost of the original tires.

**4.** W. H. Tompkins, supra, 42 B.T.A. at 295.

cert. denied, 347 U.S. 942, 74 S.Ct. 637, 98 L.Ed. 1091 (1954). Certainly a lessor is just as capable of owning an asset with depreciable components (tires) as is any other owner. Cf. Herbert Shainberg, 33 T.C. 241 (1959).

A judgment will be entered vacating the decision of the Tax Court and remanding the case to that court for further proceedings not inconsistent with this opinion.