GEORGE H. and ROSE BEAVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beaver v. Commissioner
Docket No. 2967-79.
United States Tax Court
T.C. Memo 1980-429; 1980 Tax Ct. Memo LEXIS 157; 41 T.C.M. (CCH) 52; T.C.M. (RIA) 80429; September 25, 1980, Filed Charles T. Capute, for the petitioners. Warren R. Calvert, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioners' income tax of $8,183.59 [1] for 1974. The sole issue presented is whether three loans entered *158 on the opening books of petitioners' corporations were "assumed" by those corporations within the meaning of section 357(c). [2]
This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure.
At the time the petition was filed, petitioners were married and resided in Bellefontaine, Ohio. They filed a joint Federal income tax return for 1974 with the Cincinnati Service Center, Cincinnati, Ohio. During 1973, petitioners operated five businesses as proprietorships, two of which, Eager Firestone of Jackson Center, Ohio (hereinafter Tire Center) and Eager Fine Foods of Jackson Center, Ohio (hereinafter Fine Foods), are relevant to this proceeding. The income of each proprietorship was determined under the accrual method of accounting. Tire Center was incorporated as Eager Tire Center of Jackson Center, Inc. (hereinafter Tire Center, Inc.), on January 3, 1974, and Fine Foods was incorporated *159 as Eager Fine Foods of Jackson Center, Inc. (hereinafter Fine Foods, Inc.), on December 13, 1973. In January 1974, the assets of each proprietorship were transferred to the corresponding corporation in exchange for stock and securities plus the assumption of certain liabilities. Immediately after such exchanges, petitioners were "in control" of the corporations within the meaning of section 351. As reflected on its opening books, Tire Center, Inc., had assets amounting to $35,930.85, an amount which equalled the petitioners' aggregate adjusted basis therein. Also reflected upon its opening books were liabilities of $46,792.71, which included an indebtedness in favor of Citizens Baughman National Bank of Sidney in the amount of $8,800. That loan traces its genesis to a loan from Citizens Baughman National Bank obtained by petitioners on June 4, 1973, at which time petitioners executed a $10,000 promissory note in their individual capacities. This note called for monthly payments of $200, and, as of the date of transfer of assets to Tire Center, Inc., the unpaid balance stood at $8,800. The inventory of Tire Center as well as its proceeds and products were given as security *160 for the loan, and the funds obtained thereby were used by petitioners to operate Tire Center as a proprietorship. The loan was never expressly assumed in writing by Tire Center, Inc., nor was it rewritten after Tire Center, Inc., took possession of the proprietorship's assets (including the inventory). However, the entire $8,800 balance was repaid with corporate funds. As reflected on its opening books, Fine Foods, Inc., has assets amounting to $112,519.41, an amount which equalled petitioners' adjusted basis therein. Also reflected upon its opening books were liabilities of $137,523.75, [3] which included two notes in favor of Citizens Baughman National Bank in the amounts of $5,208.81 [4] and $25,000. The 25,000 loan was obtained on July 21, 1972, by petitioners and Harold and Sandra Wears, acting together as the partnership of Eager Fine Foods. They jointly executed a promissory note secured by the personal residences of both couples, and the proceeds of the loan were used in the operation of the partnership. *161 Prior to the end of 1973, Harold and Sandra Wears withdrew from the partnership, leaving petitioners to run Fine Foods as their proprietorship. In 1974 and subsequent to the incorporation of Fine Foods, Inc., petitioners sold or traded their home, and Citizens Baughman National Bank released its mortgage on it in exchange for a mortgage upon petitioners' newly acquired home. At no time was the $25,000 liability expressly assumed in writing by Fine Foods, Inc. However, all payments of principal made subsequent to Fine Foods, Inc.'s incorporation and prior to 1979 (amounting to $8,100) were paid by Fine Foods, Inc., Inc., and, of the total amount of $9,400 of principal paid through January 1, 1980, petitioners paid in their individual capacity only between $600 and $1,300. [5]
On February 12, 1973, petitioners obtained a $7,500 loan from Citizens Baughman National Bank, secured by the assets of the Fine Foods proprietorship, and the funds were used in the operation thereof. On March 29, 1974, petitioners executed a $9,700.12 promissory note in favor of Citizens Baughman National *162 Bank, representing the unpaid balance of the $7,500 loan (some $5,700.12), plus an additional $4,000. [6] This loan also was secured by the assets of Fine Foods. Neither the $7,500 indebtedness nor the $9,700.12 indebtedness was ever expressly assumed by Fine Foods, Inc. Yet it appeared on the opening books of Fine Foods, Inc., with an unpaid balance of $5,208.81. [7]
The transfers of assets to Tire Center, Inc., and Fine Foods, Inc., fall within the ambit of section 351. An exception to its general tax-free treatment is contained in section 357(c), which provides that -- if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.[8]
*163 Petitioners argue that the three liabilities at issue were only placed upon the corporations' books for "accounting purposes" and that at no time were they "acquired" or "assumed" by the corporations within the meaning of section 357(a) and (c). Respondent counters with a two-pronged attack: first, that all three liabilities were assumed by the corporations as a matter of state law; second, that, in any event, the $8,800 and $6,129.39 loans fall within section 357(c) because they were secured by property admittedly transferred to the corporations. The burden of proof is on petitioners. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of practice and Procedure.
Respondent's second position is clearly correct. Petitioners do not deny that both of the specified loans were secured by property transferred to the corporations. Any liability "to which the [transferred] property is subject" is caught within section 357(c)'s net; that the petitioners remained liable on the notes, or that Citizens Baughman National Bank may have continued to look to petitioners for repayment, is of no moment. Rosen v. Commissioner,62 T.C. 11, 19 (1974), *164 affd. without published opinion 515 F.2d 507 (3d Cir. 1975). We hold, accordingly, that the $8,800 and $6,129.39 must be treated as liabilities to which section 357(c) applies. In addition, we hold that, as to all three loans, petitioners have failed to meet their burden of proving that the corporations did not assume each of such loans. Respondent does not argue that whether the corporations assumed the liabilities of the proprietorships should be determined without regard to local law. [9] On the contrary, he devotes a substantial portion of his brief to demonstrating that petitioners' corporations had, according to Ohio law, assumed the liabilities in issue. Petitioners introduced no evidence nor cited any authority on this issue. Although we have found no case directly on point, it appears that Ohio law would treat the corporations as having assumed petitioners' liabilities, at least if petitioners intended that result; indeed, where there is a mere change in the form of a business, by way of incorporation, the Supreme Court of Ohio has indicated that there is a presumption that business-related *165 liabilities follow the assets transferred and impose liability on the transferee corporation. Cf. Andres v. Morgan,62 Ohio St. 236, 56 N.E. 875 (1900). That the loans were entered on the books of the corporations certainly suggests an intent to have the corporations assume them. That corporate funds were used to repay some of the liabilities -- liabilities incurred to obtain funds used to operate the businesses now run by the corporations and therefore business-related -- further supports a finding that petitioners intended the corporations to assume the debts. Petitioners did not testify as to their actual intent. There is no evidence to support their assertion that the liabilities were not assumed by the corporations. Indeed, all the indicia are countrary. Since it is clear that Ohio law does not require an express corporate act to effectuate the assumption of a liability, Andres v. Morgan,supra, we find and hold that petitioners have not established that the liabilities in question were not assumed by their corporations. Decision will be entered for the respondent. Footnotes
1. In his answer, respondent claimed an increase in the asserted deficiency to $8,388.59. See also footnotes 3 and 4, infra↩. 2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
3. The correct figure should be $138,444.33. See footnote 4, infra↩. 4. The parties have stipulated that the correct amount should have been $6,129.39.↩
5. Of the $11,188.54 paid in interest during the same period, petitioners paid at least $1,584.89.↩
6. The record is unclear whether that $4,000 had been obtained on October 24, 1973, or on March 29, 1974. ↩
7. See footnote 4, supra.↩
8. The parties have stipulated the appropriate percentages of capital and ordinary gain, pending resolution of the section 357(c) issue.↩
9. See Parsons v. Commissioner,T.C. Memo. 1972-72↩.