William F. OWEN, Jr.; Gretchen K. Owen, Petitioners–Appellants,

v.

COMMISSIONER INTERNAL REVENUE SERVICE, Respondent–Appellee.

No. 88–7026.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1988.

Decided Aug. 9, 1989.

Kevin M. Klemz, Oppenheimer, Wolff & Donnelly, Minneapolis, Minn., for petitioners-appellants.

William S. Rose, Asst. U.S. Atty. Gen., Tax Div., Washington, D.C., for respondent-appellee.

Before HALL, WIGGINS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

William and Gretchen Owen appeal the tax court's decision denying them certain investment tax credits and forcing them to recognize a taxable gain on a 1981 transfer of equipment. *Owen v. Commissioner*, 53

T.C.M. (CCH) 1480 (1987). We have jurisdiction under 26 U.S.C. § 7482. We affirm.

## I

### FACTS

Over the years, William Owen participated in several business ventures with Stephen McEachron. In 1977, they formed a general partnership called McO Investment ("McO"), in which they were equal partners. In 1980, Owen and McEachron entered the seismic drilling business. They borrowed money to buy drilling equipment, secured the loan by the equipment, gave their personal guaranties to the lender, and placed title to the equipment in McO. They then leased most of the equipment to Western Exploration, Inc. ("Western"), a corporation in which they had equal ownership interests.[1] Western conducted the seismic drilling operations.

The equipment leases from McO to Western generally were on a month-to-month basis, although some were modified to provide lease terms from day-to-day. None of the leases contained a fixed termination date. Each lease, however, was subject to cancellation by either party upon notice to the other of thirty days or twenty-four hours, depending on the type of lease used.

By 1981, the petroleum industry had suffered economic reversals, and Owen and McEachron decided to sell. Their tax attorney advised them the best way to do that was to get the assets of the business into one corporate entity. So, in 1981, all of McO's assets were transferred to Western. At that time, the indebtedness secured by the assets exceeded the assets' adjusted basis.

The Commissioner of Internal Revenue disallowed investment tax credits which the Owens had taken on their 1980 income tax return for the purchase of the equipment which had been leased to Western. He concluded that the Owens were not entitled to the short-term lease exception of I.R.C. § 46(e)(3)(B). The Commissioner also assessed a capital gain tax against the Owens

---

**1.** Owen testified that although some equipment had been leased to third parties, such transactions were "relatively insignificant." *Owen,* 53 T.C.M. (CCH) at 1483–84 n. 15.

on their 1981 return based upon McO's transfer of the equipment to Western. The capital gain tax was calculated with reference to the amount by which the indebtedness secured by the equipment exceeded the equipment's adjusted basis on the date of the transfer. The Commissioner's position, relative to this appeal, was upheld by the tax court. The Owens appeal.

## II

## THE INVESTMENT TAX CREDIT

■ Non-corporate lessors such as the Owens, who buy equipment and then lease it to another, may qualify for an investment tax credit provided that the term for which the property is leased out is less than fifty percent of the property's useful life. I.R.C. § 46(e)(3)(B) (1982) (later amended). We calculate the length of the lease by examining the "realistic contemplation" of the parties at the time the property is first put into service. *Hokanson v. Commissioner*, 730 F.2d 1245, 1248 (9th Cir.1984); *see also Connor v. Commissioner*, 847 F.2d 985, 989 (1st Cir.1988); *Ridder v. Commissioner*, 76 T.C. 867, 875 (1981). We review the tax court's decision that "the parties realistically contemplated that the leases would last" longer than fifty percent of the useful life of the property for clear error. *Hokanson*, 730 F.2d at 1249; *Connor*, 847 F.2d at 989.

First, the Owens contend we should reject the "realistic contemplation" test. They rely primarily on three cases. Two cases, *Hoisington v. Commissioner*, 833 F.2d 1398, 1406 (10th Cir.1987), and *Miller v. Commissioner*, 85 T.C. 1064, 1072 (1985), are so clearly distinguishable that they do not warrant discussion. In the third case, *McNamara v. Commissioner*, 827 F.2d 168, 171–72 (7th Cir.1987), the Seventh Circuit rejected the "realistic contemplation test" which we embraced in *Hokanson*, 730 F.2d at 1248. We are bound, however, by *Hokanson*. Only an en banc court of this circuit can overrule it.

■ Mindful of the *Hokanson* precedent, the Owens try to distinguish *Hokanson* on the basis that it involved a lease to an unrelated lessee. The Owens argue that the touchstone of the short-term lease exemption provided by I.R.C. § 46(e)(3)(B) is the concept that the purchaser of property who leases it to another is required to bear the economic risk attendant to ownership of the property for longer than the property's useful life to qualify for an investment tax credit. The Owens point out that in the present case Owen and McEachron were equal partners in the partnership that bought the equipment, and they were equal owners of the corporation to which it was leased. Thus, they assert, they bore the real economic risk of ownership of the property throughout its purchase and lease, and they should be entitled to the investment tax credits.

This argument asks that we reject the language of I.R.C. § 46(e)(3)(B) which tells us that the short-term lease exception depends upon the term of the lease. The Owens would have us interpret the statute to award investment tax credits based upon an economic analysis of where the risk of ownership lies in a given transaction. We decline to do so. *See Connor*, 847 F.2d at 987–88 (following *Hokanson* and noting that administrative concerns prompted Congress to adopt a statutory test which excludes some legitimate lessors).

■ The Owens further argue that the tax court clearly erred in finding that the parties to the leases realistically contemplated that the leases would last longer than fifty percent of the useful life of the property. We disagree. There is ample evidence in the record to support this finding by the tax court. *See Owen*, 53 T.C.M. (CCH) at 1483–84.

## III

## THE 1981 TRANSFER

■ The tax court held that section 357(c) [2] requires the Owens to recognize a

---

2. Section 357 provides:
   (c) Liabilities in excess of basis.—

(1) In general.—In case of an exchange—

gain on the 1981 transfer of equipment from McO to Western. The court calculated the gain by subtracting the adjusted basis of the equipment from the total liabilities secured by the equipment on the date of the transfer.[3] The Owens argue that the tax court should have excluded liabilities secured by the property which they had personally guaranteed and for which they remained liable following the transfer. We disagree.

Under I.R.C. § 357(c), the Owens' continuing personal liability for the loans secured by the transferred equipment is irrelevant. "So long as the transferred property remains liable on the debt, then, such debt can be a section 357(c) liability even if the petitioner retained personal, unrelieved liability on it." *Smith v. Commissioner*, 84 T.C. 889, 909 (1985); *see also Beaver v. Commissioner*, 41 T.C.M. (CCH) 52, 54 (1980); *Rosen v. Commissioner*, 62 T.C. 11, 19 (1974), *aff'd without published opinion*, 515 F.2d 507 (3d Cir.1975).

First, the Owens ask us to reject the authority of *Smith, Rosen* and *Beaver*, and to hold that I.R.C. § 357(c) only applies where a taxpayer realizes an economic benefit from the transfer. We decline the Owens' invitation because section 357(c)'s plain language makes no special provision for transfers not resulting in an economic benefit to the transferor. *Cf. Commissioner v. Asphalt Products Co.*, 482 U.S. 117, 120–21, 107 S.Ct. 2275, 2277–78, 96 L.Ed.2d 97 (1987) (per curiam) (courts must give effect to the plain language of the internal revenue code); *Commissioner v. Tufts*, 461 U.S. 300, 307, 103 S.Ct. 1826, 1831, 75 L.Ed.2d 863 (1983) (taxpayer may realize a taxable gain under I.R.C. § 1001 even without receiving a net economic benefit from the transferee).

Second, the Owens claim that our decision *Jackson v. Commissioner*, 708 F.2d 1402 (9th Cir.1983) (per curiam), supports their assertion that section 357(c) only applies to transactions resulting in a gain cognizable under I.R.C. § 1001. *Jackson* offers no support for this argument. Indeed, in *Jackson*, we assumed that sections 351 and 357(c) were applicable despite our holding that section 1001's requirements for "a taxable transfer were not met." *Jackson*, 708 F.2d at 1404–05.

Third, the Owens assert that *Jackson* held that section 357(c)'s provisions do not apply to liabilities which are guaranteed by the transferor. We disagree. *Jackson* held that a partner did not have a section 357(c) gain when he transferred his partnership interest to his wholly owned corporation even though his share of the joint venture's liabilities exceeded his adjusted basis in the partnership interest. *Id.* at 1404–05; *id.* at 1406 (Duniway, J., concurring and dissenting). In *Jackson*, the taxpayer remained liable on the partnership loans after the transfer of the partnership interest. The Owens claim that *Jackson* stands for the proposition that a taxpayer's continued liability for loans secured by the transferred property prevents the Commissioner from treating the loans as section 357(c) liabilities. The Owens suggest that *Jackson* rejected, *sub silentio*, the holdings of *Rosen* and *Beaver*. We conclude that *Jackson* is distinguishable.

*Jackson* involved the transfer of an interest in an ongoing partnership, and the interest was not encumbered by any liabilities. Thus, the property, *i.e.*, the partnership interest, transferred was not "subject to" a liability which could trigger a section 357(c) gain. The case presently before us involves the transfer of equipment which the tax court found to be subject to substantial liabilities in excess of the equip-

(A) To which section 351 applies, ... if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be....

I.R.C. § 357(c) (1988). The key issue on appeal is what qualifies as "liabilities to which the property is subject." *Id.*

3. The tax court also gave the Owens credit for additional factors which are not relevant to the instant appeal.

ment's adjusted basis. In such a case, section 357(c) applies.[4]

Furthermore, *Jackson* was decided without the benefit of the Supreme Court's opinion in *Commissioner v. Tufts,* 461 U.S. 300, 307, 103 S.Ct. 1826, 1831, 75 L.Ed.2d 863 (1983). *Tufts* and *Jackson* were published at approximately the same time. Relying in part on dicta from *Crane v. Commissioner,* 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947), *Jackson* concluded that section 1001, and the tax system as a whole, require that the transferor receive "economically significant consideration." *Jackson,* 708 F.2d at 1404. *Tufts* clarified the scope of *Crane* and rejected *Crane's* "limited theory of economic benefit." *Tufts,* 461 U.S. at 307, 103 S.Ct. at 1831. *Tufts* undercuts the authority supporting the *Jackson* decision.

Fourth, the Owens contend that section 357(c)'s categories of (1) assumed liabilities and (2) liabilities to which the transferred property is subject are mutually exclusive. They assert that the latter category only applies to nonrecourse, unassumable liabilities. We disagree. The tax court decisions in *Smith, Rosen* and *Beaver* applied section 357(c) to recourse liabilities secured by the transferred property. *Smith,* 84 T.C. at 909; *Rosen,* 62 T.C. at 19; *Beaver,* 41 T.C.M. (CCH) at 54; *see also* Treas.Reg. § 1.357-2 (1988) (section 357(c) gain will occur "whether or not the liability is assumed by the transferee"). We hold that section 357(c) applies to recourse liabilities to which the transferred property is subject even if the transferor remains subject to the liabilities following the transfer.

Finally, the Owens contend that the tax court erred by failing to apply the step transaction doctrine to treat post-transfer documents prepared in June or July 1982 as retroactive to the December 31, 1981 equipment transfer. The tax court declined to apply the step transaction doctrine because it found that the 1982 agreements were not part of a single, integrated scheme relating back to the December 31,

1981 transfer. *See Owen,* 53 T.C.M. (CCH) at 1485–86. We cannot say that the tax court's finding on this issue is clearly erroneous.

AFFIRMED.

---

**4.** In *Jackson,* we did not consider whether any property of the partnership was used to secure the loans. *Cf. Smith,* 84 T.C. at 910 (partnership interests "were in substance" subject to the section 357(c) liabilities which were secured by the partnership's real property).