JOHN F. AND JACQUELYN J. KENNEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kenney v. Commissioner
Docket No. 47766-86
United States Tax Court
T.C. Memo 1993-108; 1993 Tax Ct. Memo LEXIS 128; 65 T.C.M. (CCH) 2152; March 25, 1993, Filed *128 For petitioners: Scott Kauffman and Barnet Resnick. For respondent: Kathryn K. Vetter. RUWE
RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined a deficiency and additions to tax in petitioners' 1982 Federal income taxes as follows: Additions to Tax
Deficiency
Sec. 6651
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6659
Sec. 6661
$ 64,753
$ 3,572
$ 3,587
50 percent of
$ 12,225
$ 4,985
the interest
due on $ 64,753
On October 7, 1986, respondent issued a notice of deficiency disallowing deductions which petitioners had claimed on their 1982 Federal income tax return, and on December 19, 1986, petitioners filed a petition with this Court. On March 10, 1989, petitioners amended their petition in order to claim that they had an unused investment tax credit in 1983 in the amount of $ 69,553 and that this credit should be carried back to 1982 to offset the deficiency determined by respondent. After concessions, the sole issue is whether petitioners, as noncorporate lessors, are entitled to an investment tax credit for 20 trailers which they purchased and leased in 1983. The parties submitted this case fully stipulated pursuant to Rule 122(a). *129 Petitioners are husband and wife who resided in Tahoma, California, at the time they filed their petition. References to petitioner in the singular are to John F. Kenney. During 1982 and years thereafter, petitioner was employed as a physician. In December 1983, petitioners purchased 20 trailers from Utility Trailer Sales of Boise, Inc. (Utility Trailer). The purchase was made through their financial adviser, Mr. Rick Klingingsmith. Petitioners financed part of the purchase price through the Seattle First National Bank. In December 1983, petitioners, through Mr. Klingingsmith, leased the trailers to Ida Cal Freight Lines, Inc. (Ida Cal), in Nampa, Idaho. Utility Trailer delivered the trailers to Ida Cal on December 13, 1983. On December 27, 1983, the executive vice president of Ida Cal wrote a letter to the Seattle First National Bank as follows: Gentlemen: Re: Lease of 1984 46'6" Utility Trailers We have executed net leases for a non-cancellable term of thirty-five months for quantity 20 of the above described trailers. We took delivery two weeks ago and we are very pleased with the quality and design of this equipment. Sometime within six months to a year prior *130 to the expiration of the present lease I believe we will approach each of our lessors and negotiate a lease for additional periods, perhaps three to seven additional years, depending on financial and economic conditions then. This, of course, is assuming that these trailers are not technologically or economically obsolete, nor illegal, or the like.
On their original 1983 Federal income tax return, petitioners claimed depreciation and an investment tax credit attributable to the trailers using a cost basis of $ 718,260. Petitioners did not claim any section 162 deductions for expenses attributable to the trailers. [1]
Mr. Klingingsmith died in 1984. In April 1986, petitioner received a letter from the executive vice president of Ida Cal as follows: Dear Mr. Kenney: We are starting to look at alternative equipment *131 plans for the fourth quarter of this year. You are the lessor of twenty trailers under a lease which terminates in November. We need to know no later than May 15, 1986 what your plans are at the expiration of this contract. Would you please advise us at your earliest opportunity what your interests and intentions are for the future. I look forward to hearing from you.
Petitioner wrote back to Ida Cal on June 3, 1986, stating that he felt uncomfortable with Ida Cal's offer of renewal and that he was going to have PLM Investment Management, Inc. (PLM), manage his trailer units in the future. The letter further stated that someone from PLM would contact Ida Cal. On October 14, 1986, petitioner entered into a management agreement with PLM. On or about October 13, 1986, petitioners filed an amended 1983 return. On this amended return, petitioners reported that their cost basis for the trailers was $ 679,876, as opposed to the $ 718,260 shown on the original return. Also on the amended return, petitioners allocated $ 36,384 to the cost of the tires on the trailers and claimed an expense in the amount of $ 36,384. [2]
*132 The trailers were originally equipped with Michelin Pilote tires. Typically, the original tread on these tires would last 100,000 miles. The tire casing on the Michelin Pilotes would last 350,000 to 500,000 miles. Ida Cal retreaded tires when the original tread was worn down. Usually, Ida Cal took the wheels and tires off new trailers and put them on tractors or trucks, since the tractors or trucks were in the most crucial position. Ida Cal then used retreads on the trailers. On February 27, 1987, PLM, on petitioners' behalf, executed a new equipment lease agreement for the trailers with Ida Cal. On June 1, 1988, petitioners and Ida Cal agreed to terminate the lease agreement upon sale of the trailers to an independent third party. Petitioners then sold the trailers to May Trucking. May Trucking acquired Ida Cal. May Trucking subsequently sold the trailers and no longer has the maintenance records for them. [3]
The sole issue *133 for decision is whether petitioners have satisfied the noncorporate lessor requirements contained in section 46(e)(3) so as to be entitled to an investment tax credit. Petitioners seek to carry this credit back to the year in issue to reduce any deficiency. If petitioners are entitled to the claimed investment tax credit for 1983, it may be taken into account in redetermining petitioners' 1982 tax liability. See sec. 6214(b); Hill v. Commissioner, 95 T.C. 437 (1990). Section 38 allows a credit against tax for investments in certain depreciable property in an amount determined under section 46. However, section 46(e) (3) limits the availability of the credit with respect to noncorporate lessors. Paragraph (e) (3) of section 46 provides in part: (3) Noncorporate Lessors. --A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if-- (A) the property subject to the lease has been manufactured or produced by the lessor, or (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the *134 period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.
The property under consideration here was neither manufactured nor produced by petitioners. Thus, petitioners, as noncorporate lessors, must satisfy the requirements of section 46(e)(B) in order to qualify for the investment tax credit. These requirements are (1) a lease term of less than 50 percent of the useful life of the property, and (2) section 162 deductions in excess of 15 percent of the rental income generated by the property during the first year of the lease. Sec. 46(e)(3)(B). 1. Requirement that lease term be less than 50 percent of useful life
Section 46(e)(3) provides that the useful life of section 168 recovery property is the present class life determined under section 168(g)(2). [4] The parties agree that the useful life of the trailers was 6 years. The parties disagree as to the term *135 of the lease. Respondent argues that petitioners have failed to prove that the trailers were leased for less than 50 percent of their useful lives. The lease *136 entered into between petitioners and Ida Cal in 1983 provides that the "term of this Lease shall be the period stated in Schedule A." No Schedule A is attached to the copy of the lease in evidence. However, the letter dated December 27, 1983, from the executive vice president of Ida Cal to the Seattle First National Bank states that Ida Cal executed leases for a term of 35 months on the 20 trailers. Additionally, the correspondence between Ida Cal and petitioner in April and June of 1986 indicates that the parties anticipated termination of the lease in November of that year. We find that the term of the written lease was 35 months, which was less than 50 percent of the useful life of the trailers. Respondent cites Borchers v. Commissioner, 95 T.C. 82 (1990), affd. 943 F.2d 22 (8th Cir. 1991), for the proposition that the written lease term is not dispositive and that all the facts and circumstances surrounding the transaction must be considered in ascertaining the realistic contemplation of the parties when the property was first placed in service.[5] In Borchers, we enumerated eight factors that had aided us in determining *137 whether a lease term was indefinite. These were whether: (1) The lessor has an established practice of buying equipment in order to meet the special needs of the lessee; (2) the lessor has control of the lessee; (3) the lessor leased only to the controlled lessee; (4) the lessee leased only from the lessor; (5) the leases were renewed either automatically or without renegotiation; (6) the equipment was sold once the lessee no longer needed it; (7) the purpose of the leasing arrangement was tax avoidance; and (8) the leasing was a "financing arrangement". Borchers v. Commissioner, supra at 89. *138 Respondent does not contend, nor does the record indicate, that the lease was of an undetermined duration due to any of the first four factors. With respect to the fifth factor, the facts demonstrate that the lease was not renewed automatically or without renegotiation. Ida Cal inquired as to petitioner's intention with respect to the trailers shortly prior to expiration of the lease term. Shortly thereafter, petitioner wrote to Ida Cal stating that he was uncomfortable with Ida Cal's proposed renewal and that he would be turning the matter over to a management firm. Regarding the sixth factor, the termination of the second lease between petitioners and Ida Cal and subsequent sale of the trailers to May Trucking in 1988 does not appear to be the type of transaction contemplated by this factor since May Trucking had acquired Ida Cal and was the successor to the lessee. With respect to the seventh factor, it is clear from the lease that petitioners were aware of the tax consequences of the transaction. However, it also appears that the lease arrangement was intended to generate revenue and that petitioners acquired an opportunity for gain beyond mere tax savings. Finally, the *139 arrangement between petitioners and Ida Cal was not a mere financing arrangement. Petitioners bore the risk that the trailers could not be profitably leased after the initial lease with Ida Cal. Based on the foregoing, we find that the initial lease was not indefinite, but limited to a term of 35 months. We also find that the terms of the two separate lease agreements between petitioners and Ida Cal should not be aggregated. The leases in question were negotiated and entered into consecutively, rather than simultaneously. Sauey v. Commissioner, 90 T.C. 824, 830 (1988), affd. without published opinion 881 F.2d 1086 (11th Cir. 1989); Ridder v. Commissioner, 76 T.C. 867, 872 n.5 (1981); Rev. Rul. 76-266, 1976-2 C.B. 10-11; sec. 1.46-4(d)(4), Income Tax Regs.
2. Requirement that section 162 expenses must be in excess of 15 percent of gross rent Section 46(e)(3)(B) requires that during the first 12 months of the lease, the sum of deductions allowable to the lessor under section 162 must exceed 15 percent of the rental income produced by the property. *140 To be entitled to deductions under section 162, petitioners must prove that they incurred ordinary and necessary expenses. Sec. 162(a); Welch v. Helvering, 290 U.S. 111 (1933). The reference to section 162 in section 46(e)(3)(B) does not require that the lessor be in a trade or business. The reference simply describes the type of ordinary and necessary expenses that are included when applying the 15-percent test. Miller v. Commissioner, 85 T.C. 1064, 1072-1073 (1985). Petitioners contend that the portion of the purchase price of the trailers, which was allocated to the tires on their amended 1983 return,constitutes an expense incurred in the first year of the lease. [6]
*141 Petitioners did not claim any business expense deductions with respect to their trailers on their original income tax returns for 1983 or 1984. It was not until after respondent mailed the notice of deficiency to petitioners in 1986 that they filed an amended 1983 return and claimed that a portion of the price paid for the trailers should be allocated to the tires and deducted as an expense. Petitioners claim that they are entitled to deduct the cost of the tires in the first year. They rely on authority indicating that if tires are consumed within the first 12 months of their use, the cost of the tires may be deducted rather than capitalized. See Zelco, Inc. v. Commissioner, 331 F.2d 418 (1st Cir. 1964), vacating and remanding 40 T.C. 326 (1963); Interstate Truck Service, Inc. v. Commissioner, T.C. Memo. 1958-219; Rev. Rul. 59-249, 1959-2 C.B. 55; Rev. Rul 68-134, 1968-1 C.B. 63 (the cost of truck tires on new commercial trucking equipment may be deducted as an ordinary and necessary business expense where *142 the purchaser leases such equipment for use by the lessee, and in such use, the tires are consumable within a year or have an average useful life of less than 1 year). While petitioners' interpretation of the aforementioned legal authority is correct, they simply have not proven that the tires on their trailers were going to be consumed within the first 12 months after being placed in service. There is absolutely no evidence in the record of the expected or actual use of the tires during the first 12 months of use. The maintenance records for petitioners' trailers were not available. It was stipulated that May Trucking ran its trailers an average of 100,000 to 120,000 miles per year; however, it is not May Trucking's, but Ida Cal's, use of the trailers and tires that is relevant here. May Trucking acquired Ida Cal in 1988, whereas petitioner's tires were placed in service in 1983. Petitioners have offered no evidence that May Trucking's trailer use was similar to, or otherwise reflected, Ida Cal's use. Even if we accepted May Trucking's use of trailers and tires as evidence of Ida Cal's use, petitioners have failed to establish that the tires would have been consumed within *143 a year. The parties have stipulated that the tread on Michelin Pilote tires lasts 100,000 miles. After that, the tires can be and were retreaded. The tire casings last between 350,000 and 500,000 miles. This suggests that, even if the tires were run 100,000 miles in the first year, they would still have significant value at the end of that year. There is nothing in the record to indicate what that value was. Petitioners have failed to prove that the tires were consumable within the first 12 months and that their cost should be considered a deductible expense of leasing the trailers. Consequently, petitioners have failed to demonstrate that they satisfy the requirements of section 46(e)(3) and are eligible for the investment tax credit as noncorporate lessors. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The total cost of the trailers equipped with tires was $ 716,260 ($ 679,876 + $ 36,384), as opposed to the cost basis reported on the original 1983 return.↩
3. On the average, May Trucking ran its trailers 100,000 to 120,000 miles per year.↩
4. Recovery property is defined as tangible property of a character subject to the allowance for depreciation which is used in a trade or business or held for the production of income. Sec. 168(c)(1)(A) and (B). Sec. 168(g)(2) defines present class life as the class life applicable under sec. 167(m). Sec. 167(m)(1) states that the class life is to be prescribed by the Secretary. Sec. 1.167(a)-11(b)(4)(i), Income Tax Regs., provides that the class life under sec. 167(m) is the asset guideline period. Pursuant to sec. 1.167(a)-11(b)(4)(ii), Income Tax Regs., asset guideline periods were established in Rev. Proc. 83-35, 1983-1 C.B. 745. Since the rental equipment is recovery property under sec. 168, it has a useful life equal to the asset guideline period in Rev. Proc. 83- 35, supra↩.
5. The Ninth Circuit, to which this case is appealable, see Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), also looks to the realistic contemplation of the parties at the time the property is first placed in service, for purposes of calculating the length of a lease. See Owen v. Commissioner, 881 F.2d 832, 834 (9th Cir. 1989), affg. T.C. Memo. 1987-375↩.
6. Respondent has not questioned the accuracy of petitioners' allocation, and the parties agree that the amount of the purchase price allocated to the cost of the tires in petitioners' amended 1983 return exceeds 15 percent of gross rentals received for the first year of the lease.↩