T.C. Memo. 2001-99

UNITED STATES TAX COURT

SEGGERMAN FARMS, INCORPORATED, ET AL.,[1] Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16269-99, 16271-99,      Filed April 25, 2001.
16272-99, 16273-99.

<u>David E. Alms</u>, for petitioners.

<u>David S. Weiner</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  Respondent determined the following
deficiencies in petitioners' Federal income tax:

---

[1] Cases of the following petitioners are consolidated
herewith:  Craig and Linda Seggerman, docket No. 16271-99;
Michael Seggerman, docket No. 16272-99; and Ronald and Sally
Seggerman, docket No. 16273-99.

| Docket No. | 1993 | 1994 | 1995 |
|------------|------|------|------|
| 16269-99 | $1,059 | $3,176 | $19,431 |
| 16271-99 | 24,436 | 5,663 | -0- |
| 16272-99 | 24,058 | 2,654 | -0- |
| 16273-99 | 104,847 | 4,867 | -0- |

After concessions by the parties, the remaining issue for decision is whether petitioners must recognize a gain on the transfer of assets to Seggerman Farms, Incorporated, under section 357 to the extent that the amount of liabilities that were assumed plus the amount of liabilities to which the property was subject exceeds the total of the adjusted basis of the property that was transferred to the corporation.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

These cases were submitted fully stipulated under Rule 122. The stipulated facts are incorporated as our findings by this reference.

Petitioners Ronald and Sally Seggerman, Craig and Linda Seggerman, and Michael Seggerman, hereinafter collectively referred to as petitioners, resided in Illinois at the time they filed their petitions. Petitioner Seggerman Farms, Incorporated (Seggerman Farms), was an Illinois corporation, and its principal

place of business was Minonk, Illinois, at the time the petition was filed.

Before January 1, 1993, Ronald Seggerman and his sons, Craig Seggerman and Michael Seggerman, operated a grain and cattle farm as a joint venture and reported their respective shares of income and expenses from the farm operations on Schedule F, Profit or Loss From Farming.

On March 19, 1993, Ronald Seggerman incorporated Seggerman Farms. The stock of Seggerman Farms was distributed as follows: 100 preferred shares and 38 common shares to Ronald Seggerman, 4 common shares to Sally Seggerman, 30 common shares to Craig Seggerman, 3 common shares to Linda Seggerman, and 25 common shares to Michael Seggerman.

In early 1993, Ronald Seggerman, Craig Seggerman, and Michael Seggerman transferred property to Seggerman Farms. Ronald Seggerman transferred the following assets to Seggerman Farms:

| Asset Description | Adjusted Basis | Fair Market Value |
|---|---|---|
| Depreciable property | $53,601 | $143,760 |
| Inventory | -0- | 120,980 |
| Fertilizer & lime | -0- | 1,360 |
| Hay, straw, & oats | -0- | 7,340 |
| Market livestock | -0- | 7,500 |
| Cattle feed | -0- | 900 |
| Gas & diesel | -0- | 1,400 |
| Miscellaneous tools | -0- | 3,000 |
| Land, building, & grain | 10,000 | 140,180 |
| Cash | 2,600 | 2,600 |
| Improvements to Craig Seggerman's house | -0- | 1,400 |
| Accounts receivable | -0- | 1,440 |
| Deficiency payments | -0- | 13,960 |
| Total | 66,201 | 445,820 |

Either the property that was transferred was subject to liabilities or Seggerman Farms assumed the liabilities from Ronald Seggerman in the amount of $402,903 as follows:

| Creditor | Amount of Liability |
|---|---|
| Minonk State Bank | $259,370 |
| Ford Motor Co. | 11,533 |
| Federal Land Bank | 132,000 |
| Total | 402,903 |

The amount of the liabilities that were transferred to Seggerman Farms by Ronald Seggerman exceeded the adjusted basis of the assets that he transferred to Seggerman Farms by $336,702. The portion of this gain that was attributable to long-term capital gain was $206,751, and the portion attributable to ordinary gain was $129,951.

Craig Seggerman transferred the following assets to Seggerman Farms:

| Asset Description | Adjusted Basis | Fair Market Value |
|---|---|---|
| Depreciable property | $27,457 | $71,880 |
| Inventory | -0- | 60,490 |
| Fertilizer & lime | -0- | 680 |
| Hay, straw, & oats | -0- | 3,670 |
| Market livestock | -0- | 3,750 |
| Cattle feed | -0- | 450 |
| Gas & diesel | -0- | 700 |
| Miscellaneous tools | -0- | 1,500 |
| Cash | 3,060 | 3,060 |
| Improvements to Craig Seggerman's house | -0- | 700 |
| Accounts receivable | -0- | 720 |
| Deficiency payments | -0- | 6,980 |
| Deposits | -0- | 1,760 |
| Total | 30,517 | 156,340 |

Either the property that was transferred was subject to liabilities or Seggerman Farms assumed the liabilities from Craig Seggerman in the amount of $121,911 as follows:

| Creditor | Amount of Liability |
|---|---|
| Minonk State Bank | $98,355 |
| Ford Motor Co. | 5,766 |
| Ray Seggerman | 17,790 |
| Total | 121,911 |

The amount of the liabilities that were transferred to Seggerman Farms by Craig Seggerman exceeded the adjusted basis of the assets that he transferred to Seggerman Farms by $91,394. The portion of this gain that was attributable to long-term capital gain was $47,227, and the portion that was attributable to ordinary gain was $44,167.

Michael Seggerman transferred the following assets to Seggerman Farms:

| Asset Description | Adjusted Basis | Fair Market Value |
|---|---|---|
| Depreciable property | $27,457 | $71,880 |
| Inventory | -0- | 60,490 |
| Fertilizer & lime | -0- | 680 |
| Hay, straw, & oats | -0- | 3,670 |
| Market livestock | -0- | 3,750 |
| Cattle feed | -0- | 450 |
| Gas & diesel | -0- | 700 |
| Miscellaneous tools | -0- | 1,500 |
| Cash | 3,060 | 3,060 |
| Improvements to Craig Seggerman's house | -0- | 700 |
| Accounts receivable | -0- | 720 |
| Deficiency payments | -0- | 6,980 |
| Deposits | -0- | 1,760 |
| Total | 30,517 | 156,340 |

Either the property that was transferred was subject to liabilities or Seggerman Farms assumed the liabilities from Michael Seggerman in the amount of $113,111 as follows:

| Creditor | Amount of Liability |
|---|---|
| Minonk State Bank | $89,555 |
| Ford Motor Co. | 5,766 |
| Ray Seggerman | 17,790 |
| Total | 113,111 |

The amount of the liabilities that were transferred to Seggerman Farms by Michael Seggerman exceeded the adjusted basis of the assets that he transferred to Seggerman Farms by $82,594. The portion of this gain that was attributable to long-term capital gain was $42,827, and the portion attributable to ordinary gain was $39,767.

After the section 351 transaction, Seggerman Farms refinanced a portion of the transferred debt.  Seggerman Farms incurred the following debts:

| Creditor | Loan No. | Amount of Liability |
|---|---|---|
| Minonk State Bank | 90780 | $200,030 |
| Minonk State Bank | 01260 | 130,000 |

In addition, Seggerman Farms, Ronald and Sally Seggerman, Craig and Linda Seggerman, and Michael Seggerman borrowed the following as comakers:

| Creditor | Loan No. | Amount of Liability |
|---|---|---|
| Minonk State Bank | 90777 | $162,000 |
| Minonk State Bank | 90779 | 245,000 |

Petitioners remained personally liable on all of the debt that was assumed by Seggerman Farms, or to which the property that was received by Seggerman Farms was subject, both before and after the section 351 transfer of property to Seggerman Farms. Ronald Seggerman executed a commercial guaranty of Seggerman Farms' debt to Minonk State Bank.  Sally Seggerman, Craig Seggerman, Linda Seggerman, and Michael Seggerman executed unlimited, continuing personal guaranties of Seggerman Farms' debt to Minonk State Bank.  None of the loan proceeds were disbursed directly to petitioners.

## Discussion

The sole issue for decision is whether petitioners must recognize a gain on the transfer of assets to Seggerman Farms under section 357 to the extent that the amount of liabilities that were assumed plus the amount of liabilities to which the property was subject exceeds the total of the adjusted basis of the property that was transferred to the corporation.

Petitioners argue that, because they were not relieved personally from any debt that the corporation assumed or to which transferred property was subject or that was refinanced pursuant to restructuring of corporate debt, they should not have to recognize gain on the amount of the liabilities that exceeds the adjusted basis of the transferred assets.

Section 357(c) provides, in part:

SEC. 357(c).  Liabilities in Excess of Basis.--

> (1) In general.--In the case of an exchange--
>
> > (A) to which section 351 applies * * *
>
> > *     *     *     *     *     *     *
>
> if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

In Rosen v. Commissioner, 62 T.C. 11 (1974), affd. without published opinion 515 F.2d 507 (3d Cir. 1975), we addressed the

same issue in similar circumstances.  The taxpayer transferred all of the assets and liabilities of a sole proprietorship to a corporation in which he owned 100 percent of the outstanding stock.  The liabilities exceeded the adjusted basis of the assets that were transferred, and the taxpayer remained personally liable for the liabilities that were transferred to the corporation.  We stated that, "While the * * * [taxpayer] nevertheless remained personally liable for the payment of such liabilities, * * * there is no requirement in section 357(c)(1) that the transferor be relieved of liability" and held that the taxpayer had to recognize a gain under section 357(c) to the extent that the liabilities that were assumed by the corporation, or the liabilities to which the property that was transferred might be subject, exceeded the taxpayer's basis for the assets that were transferred.  Id. at 18-19.

Since the decision in Rosen, the Court has consistently held that, even if the taxpayer remains liable on the transferred debt, the taxpayer must recognize a gain under section 357(c) to the extent that the sum of the amount of the liabilities that were assumed, plus the amount of the liabilities to which the property was subject, exceeds the taxpayer's adjusted basis in the assets that were transferred.  See Smith v. Commissioner, 84 T.C. 889, 909 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986); Owen v. Commissioner, T.C. Memo. 1987-375,

affd. 881 F.2d 832, 835 (9th Cir. 1989); Beaver v. Commissioner, T.C. Memo. 1980-429; see also sec. 1.357-2(a), Income Tax Regs.

Petitioners rely on two Court of Appeals decisions, in which the Courts of Appeals granted taxpayers relief from recognizing a gain under section 357(c). In Lessinger v. Commissioner, 872 F.2d 519 (2d Cir. 1989), revg. 85 T.C. 824 (1985), the difference between the adjusted basis of the assets that were transferred and the liabilities that were transferred to the corporation was recorded as a loan receivable from the taxpayer to the corporation. The Court of Appeals held that, "where the transferor undertakes genuine personal liability to the transferee, 'adjusted basis' in section 357(c) refers to the transferee's basis in the obligation, which is its face amount." Id. at 526. As a result of the inclusion of the face value of the loan receivable in the adjusted basis of the assets that were transferred, there was no gain to recognize under section 357(c). See id.

In Peracchi v. Commissioner, 143 F.3d 487 (9th Cir. 1998), revg. T.C. Memo. 1996-191, the difference between the adjusted basis of the assets that were transferred and the liabilities that were transferred to the corporation was recorded as a personal note from the taxpayer to the corporation. The Court of Appeals held that the taxpayer had a basis in the personal note

equal to the face value of the note and that there was no gain to recognize under section 357(c). See id. at 496.

Respondent argues that the structure of petitioners' section 351 transaction was not the same as the structure of the taxpayers' transactions in Lessinger and Peracchi in that petitioners did not contribute loan receivables or personal notes to Seggerman Farms that would cover the difference between the transferred liabilities and the adjusted basis of the transferred property. Petitioners argue that their personal guaranties of corporate indebtedness are the equivalent of loans receivable or personal notes to the corporation because they remained liable for the corporate debt even after the section 351 transaction.

We agree with respondent. Petitioners' personal guaranties of corporate debt are not the same as incurring indebtedness to the corporation because a guaranty is merely a promise to pay in the future if certain events should occur. Petitioners' guaranties do not constitute economic outlays. Cf. Estate of Leavitt v. Commissioner, 875 F.2d 420, 422 (4th Cir. 1989) (taxpayers experienced no such call as guarantors, engaged in no economic outlay, and suffered no cost), affg. 90 T.C. 206 (1988); Brown v. Commissioner, 706 F.2d 755, 756 (6th Cir. 1983) ("the courts have consistently required some economic outlay by the guarantor in order to convert a mere loan guaranty into an investment"), affg. T.C. Memo. 1981-608 (1981). Petitioners are

contingently liable only to the secured creditors of Seggerman Farms, namely Minonk State Bank.

Although the Court of Appeals for the Seventh Circuit, to which these cases are appealable, has not decided a case squarely on point, that court refused to give a restrictive interpretation to the statute and denied relief to a taxpayer with a section 357(c) gain in Testor v. Commissioner, 327 F.2d 788 (7th Cir. 1964), affg. 40 T.C. 273 (1963). In Testor, a taxpayer transferred the assets and the liabilities of his sole proprietorship to a corporation. The liabilities were assumed by the corporation and were in excess of the aggregate book value of the assets that were transferred. None of the assets were specifically encumbered by the liabilities, and for that reason the taxpayer argued that section 357(c) did not apply. In interpreting section 357(c), the Court of Appeals affirmed the decision of the Tax Court and held that "both the language and legislative history indicate that section 357(c) is meant to apply wherever liabilities are assumed or property is transferred subject to liability." Id. at 790. The taxpayer was liable for tax on the gain under section 357(c).

Petitioners contend that their secured creditors insisted that they incorporate in order to restructure their business debt and procure additional credit for the upcoming crop season. Petitioners maintain that they realized no personal net gain and

no relief from their financial burdens as a result of the section 351 transaction and that the recognition of gain is unfair under these circumstances. Despite the reasons for or the results of petitioners' section 351 transaction, petitioners are responsible for the tax consequences. The U.S. Supreme Court has observed repeatedly that, "while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not." Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) (citations omitted).

In 1999, Congress enacted changes to section 357(c) that were effective for transactions occurring after October 18, 1998. See Miscellaneous Trade and Technical Corrections Act of 1999, Pub. L. 106-36, sec. 3001(e), 113 Stat. 127, 184. The amendment struck the words "plus the amount of liabilities to which the property is subject," from section 357(c)(1) and essentially provided relief for the taxpayer who transferred assets subject to liabilities and remained personally liable on the debt, but where the corporation did not assume the liability. Id. sec. 3001(d)(4), 113 Stat. 182. Congress also added section 357(d), which provides guidance in determining the amount of liabilities that are assumed and states in section 357(d)(1)(A) that "a

recourse liability (or portion thereof) shall be treated as having been assumed if * * * the transferee has agreed to, and is expected to, satisfy such liability (or portion), whether or not the transferor has been relieved of such liability". <u>Id.</u> sec. 3001(b), 113 Stat. 182.

The 1999 amendment does not apply to these cases, because the transactions in these cases occurred in 1993. Even if section 357(d)(1)(A) as enacted in 1999 did apply, petitioners' personal liability on the debt that was transferred to the corporation would continues to be irrelevant. Even after congressional amendments to section 357, Congress has refrained from providing relief to taxpayers in petitioners' situation.

We conclude that under section 357 petitioners must recognize a gain on the transfer of assets to Seggerman Farms.

To reflect the foregoing and concessions of the parties,

<u>Decisions will be entered under Rule 155</u>.